JEFFREY F. KELLER (SBN 148005)
jfkeller@kellergrover.com
CAREY G. BEEN (SBN 240996)
cbeen@kellergrover.com
SARAH R. HOLLOWAY (SBN 254134)
sholloway@kellergrover.com
KELLER GROVER, LLP
1965 Market Street
San Francisco, California 94103
Tel: (415) 543-1305 /Fax: (415) 543-7861

Attorneys for Plaintiff and the Putative Class

Additional counsel listed on signature page

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY FORSYTH, individually and on behalf of a class of similarly situated individuals,<br><br>            Plaintiff,<br><br>            v.<br><br>MOTION PICTURE ASSOCIATION OF AMERICA, INC., a New York corporation, THE WALT DISNEY COMPANY, a Delaware corporation, PARAMOUNT PICTURES CORPORATION, a Delaware corporation, SONY PICTURES ENTERTAINMENT INC., a Delaware corporation, TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation, UNIVERSAL CITY STUDIOS LLC, a Delaware corporation, WARNER BROS. ENTERTAINMENT INC., a Delaware corporation, and NATIONAL ASSOCIATION OF THEATRE OWNERS, a New York corporation,<br><br>            Defendants. | Case No:<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF**

## CLASS ACTION COMPLAINT FOR
## DECLARATORY JUDGEMENT, INJUNCTION AND OTHER RELIEF

Plaintiff Timothy Forsyth, on behalf of himself and Classes and Sub-Classes of similarly situated individuals, brings this class action against defendants Motion Picture Association of America, Inc., The Walt Disney Company, Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLC, Warner Bros. Entertainment, Inc., and the National Association of Theatre Owners, and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation by his attorneys.

## I. NATURE OF THE CASE

1.     The major Hollywood studio defendants (The Walt Disney Company, Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLC, Warner Bros. Entertainment, Inc., or their predecessors), together with defendant National Association of Theatre Owners ("NATO"), created the film rating service of defendant Motion Picture Association of America (the "MPAA") to serve as the film industry's guardian for the protection of parents and children under the age of seventeen.  As defendants themselves described it, and as they have operated it since it was established in 1968, the role of the MPAA's film rating service is to: a) advise and warn parents regarding the content of the films it rates that the average parent in the United States would find inappropriate or unsuitable for children under the age of seventeen unaccompanied by a parent or guardian, and b) protect children under the age of seventeen by prohibiting them from entering theatres and viewing films featuring conduct, imagery and language that defendants determine is not suitable or appropriate for children under the age of seventeen unless accompanied by a parent or guardian.

2.     Since at least 2003, the MPAA and its members the major Hollywood studio defendants and NATO have known that exposure to tobacco imagery in films rated "G," "PG,"

and "PG-13," that is, youth-rated films which are accessible and frequently marketed to attract children and adolescents, is one of the major causes of children becoming addicted to nicotine.

3.    Beginning as early as 2003, the defendants have repeatedly been provided with recommendations from numerous and varied health experts from Harvard University, Johns Hopkins University (including the senior scientific editor of three of the last five U.S. Surgeon General's reports on tobacco and health), the University of California-San Francisco, Dartmouth College, thirty-one state Attorneys General, the New York State Department of Health, the Los Angeles County Department of Health Services, and the World Health Organization, and from national organizations including the American Medical Association, the American Academy of Pediatrics, the Truth Initiative (formerly American Legacy Foundation), the American Lung Association, the American Heart Association, and the American Public Health Association, among others -- to eliminate youth exposure to smoking in "G," "PG," and "PG-13" rated films or, more specifically, to assign the "R" rating to future films with smoking so as to substantially and permanently reduce the deadly physical harm these films pose to young audiences.

4.    Defendants, however, have repeatedly assigned, and continue to assign, their seal of approval and certification that films intended for children under the age of seventeen are suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, despite defendants' knowledge of the authoritative, peer reviewed, scientific evidence that the exposure to tobacco imagery in youth rated films has caused, and will continue to cause, hundreds of thousands of children under the age of seventeen in the United States to become addicted to tobacco every year.  During the period 2012 through the present, defendants' film rating system – certified and rated thousands of films featuring tobacco imagery as suitable and appropriate for children under the age of seventeen without a parent or guardian, causing over 1.1 million children under the age of seventeen to become addicted to nicotine and will cause the eventual premature death of 360,000 of such nicotine addicts from tobacco caused diseases including lung cancer, heart disease, stroke and emphysema.

5.    From 2003 when the defendants were notified that exposure to tobacco imagery in

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

films causes children and adolescents to smoke, through 2015, youth-rated movies recruited approximately 4.6 million adolescents in the United States to smoke, of which approximately 1.5 million are expected to die from tobacco-induced diseases in years to come. And, at current rates, if defendants continue their current practice of certifying and rating films with tobacco imagery as suitable and appropriate for children and adolescents under the age of seventeen unaccompanied by a parent or guardian, defendants' conduct will cause an additional 3.2 million American children alive today to smoke, and one million of those children to die prematurely from tobacco-related diseases including lung cancer, heart disease, stroke and emphysema.

6.     This lawsuit seeks: a) a declaratory judgment that defendants' practice of providing their seal of approval and certification that films with tobacco imagery are suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian is negligent, false and misleading and a breach of defendants' fiduciary and statutory duties; b) an injunction to stop defendants from continuing to rate films with tobacco imagery as "G," "PG," or "PG-13," that is, suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, because defendants' conduct has caused, and if not enjoined will continue to cause, hundreds of thousands of children and adolescents in the United States, and millions of children and adolescents throughout the world, to become addicted smokers, and to suffer tobacco-related disease, disability and premature death; c) damages for consumers who purchased theatre tickets for films that were inaccurately, negligently and falsely certified and rated by defendants as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian despite the fact that the films featured tobacco imagery; and d) disgorgement of defendants' ill-gotten financial gains resulting from their breach of fiduciary duty and false and inaccurate youth ratings of films with tobacco imagery.

## II. PARTIES

7.     Plaintiff Timothy Forsyth ("Mr. Forsyth") is a citizen and resident of Hayward, California. Mr. Forsyth is the parent of two children ages twelve and thirteen and Mr. Forsyth has purchased theatre tickets for his children for films that featured tobacco imagery that were

---

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

1   rated "PG-13" by the defendants.

2       8.   Defendant Movie Picture Association of America, Inc., ("MPAA") is a New York

3   corporation with its principal place of business in Washington, D.C.  The MPAA is owned and

4   controlled by the six major Hollywood studio defendants (The Walt Disney Company,

5   Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Twentieth Century Fox Film

6   Corporation, Universal City Studios LLC, and Warner Bros. Entertainment, Inc.).

7       9.   Defendant The Walt Disney Company ("Disney") is a Delaware corporation with its

8   principal place of business in California and its operations include the following: Walt Disney

9   Motion Pictures, Walt Disney Animation Studios, Pixar Animation Studios, Lucasfilm, Marvel

10  Studios, and Touchstone Pictures.

11      10.  Defendant Paramount Pictures Corporation ("Paramount") is a Delaware corporation

12  with its principal place of business in California and its operations include the following:

13  Paramount, Paramount Animation, Paramount Vantage, Comedy Central Films, Insurge, MTV

14  films, and Nickelodeon Movies.

15      11.  Defendant Sony Pictures Entertainment Inc. ("Sony") is a Delaware corporation with

16  its principal place of business in California and its operations include the following:  Columbia

17  Pictures, Tristar Pictures, Screen Gems, Sony Pictures, Sony Pictures Animation, and Sony

18  Pictures Classics.

19      12.  Defendant Twentieth Century Fox Film Corporation ("Fox") is a Delaware corporation

20  with its principal place of business in California and its operations include the following:

21  Twentieth Century Fox, Fox 2000, Fox Searchlight, Fox Animation and Blue Sky Studios.

22      13.  Defendant Universal City Studios LLC ("Universal") is a Delaware Corporation with

23  its principal place of business in California and its operations include the following:  Universal

24  Pictures and Focus Features.

25      14.  Defendant Warner Bros. Entertainment, Inc., ("Warner Bros.") is a Delaware

26  corporation with its principal place of business in California and its operations include the

27  following:  Warner Bros. Pictures Inc., and New Line Cinema LLC."

28

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

15.   Disney, Paramount, Sony, Fox, Universal and Warner Brothers are collectively referred to as the "major Hollywood studios" or "major Hollywood studio defendants".  The six major Hollywood studio defendants (or their predecessors) have, at all relevant times, been the six owner and member companies of the MPAA.  Each company is represented on the MPAA Board and each company has one vote.  The major Hollywood studio defendants have de facto approval and control over all of the MPAA's activities including the MPAA's film rating service.

16.   Defendant National Association of Theatre Owners, Inc., ("NATO") is a New York corporation with its principal place of business in Washington, D.C.  NATO is a national association of theater owners who own and operate movie theaters in the United States.

17.   The major Hollywood studios and NATO created the film rating service of the MPAA and, at all relevant times, have operated, managed and controlled the MPAA's film rating service.  At all relevant times, the defendant MPAA's film rating service has acted as the agent for the major Hollywood studios and NATO.

### III. JURISDICTION

18.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a State different from at least one defendant; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) none of the exceptions under that subsection applies to this action.

### IV. VENUE

19.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c).

### V. THE PUBLIC HEALTH FACTS REGARDING TOBACCO AND CHILDREN

20.   Tobacco use is the largest single cause of preventable death in the United States.  The 2014 U.S. Surgeon General's report on tobacco states: "For the United States, the epidemic of smoking-caused disease in the twentieth century ranks among the greatest public health catastrophes of the century….  If smoking persists at the current rate among young adults in this country, 5.6 million of today's Americans younger than 18 years of age are projected to die prematurely from a smoking-related illness."

21.   According to the Centers for Disease Control and Prevention ("CDC"), in the United States alone, more than 480,000 people die prematurely each year from tobacco-related disease; cigarette smoking reduces the life expectancy of smokers in the United States by an average of 12 years. Twenty-five million current smokers in the U.S. are expected to die from a tobacco-caused disease.  Deaths in the United States from tobacco related-diseases exceed the combined death toll from AIDS, alcohol, car accidents, murders, suicides, drug abuse, and fires.

22.   Nicotine is one of the most addictive substances known –comparable to heroin or cocaine. Tobacco is the only legal consumer product that kills half of its regular customers when used exactly as the manufacturer intended.

23.   In the United States, direct medical costs for adult medical conditions caused by tobacco approach $170 billion each year and the average annual smoking-attributable productivity losses exceed $156 billion.  The annual combined health and productivity cost to the U.S. economy from tobacco consumption, more than $325 billion, nearly equals two percent of annual U.S. Gross Domestic Product.

24.   Ninety percent (90%) of all adult smokers begin smoking by age eighteen.  Early signs of heart disease and stroke are found among adolescents who smoke.  An adolescent's lung function may be permanently impaired.  According to the U.S. Surgeon General, the earlier that adolescents start smoking, the more likely they will become addicted.

25.   Tobacco is the leading cause of preventable death globally.  Smoking kills one in ten adults around the world.  Six million people worldwide die prematurely each year from tobacco related-disease and the number of deaths due to tobacco use is projected to surpass 8 million in 2020.  650 million of the world's current population of adolescents and adults are projected to lose their lives to tobacco.  According to the World Health Organization ("WHO"), if current trends continue tobacco use may cause one billion deaths in the Twenty-First Century.

## VI. THE TOBACCO INDUSTRY'S USE OF FILMS TO RECRUIT ADOLESCENT SMOKERS IN THE UNITED STATES AND THROUGHOUT THE WORLD

26.   Children are particularly vulnerable to various forms of marketing and advertising (both

direct and indirect) and presumptively less capable than adults to understand and appreciate the health consequences and risks of smoking.  Keeping children from becoming addicted to tobacco during their adolescence is critical to protecting them from debilitating smoking related illnesses, and premature death.

27.  WHO described the seductive lure of film imagery on children in this way:

> "Films are effective because they influence behavior and form social norms. Films, especially those made in the United States, are a major source of viewer identification with celebrities. They can encapsulate dreams, craft hopes and help viewers escape the tedium of everyday life. For the tobacco industry, films can provide an opportunity to convert a deadly consumer product into a cool, glamorous and desirable lifestyle necessity. ….. The presentation of smoking in films does not reflect reality.  In reality, smoking tends to be highest among lower socioeconomic groups. In films, the prevalence of smoking depicted by characters, in particular among the higher socioeconomic characters frequently portrayed by lead actors, is higher than the prevalence of smoking by comparable people in the general population. The real health consequences of smoking are rarely shown. …. Because smoking on screen is vivid and because young people see so many films so often, films are the most effective method currently available for the tobacco industry to recruit new smokers from children and adolescents in the United States and throughout the world.  The most vulnerable age group must not continue to be exposed to the most powerful promotional channel for smoking imagery in today's globalized economy."

28.  Historically, tobacco companies embraced Hollywood by including paid tobacco endorsements beginning in 1927, the year of the first "talking picture."  From the late 1930s through the 1940s, two out of three top movie stars advertised cigarette brands, for a fee, in newspapers and magazines and on radio while also smoking on screen.  In one year alone, tobacco companies agreed to pay movie stars at least $3.3 million (in today's dollars) for these advertising "tie-in" services.  Movie studios, including the predecessors of today's Columbia, Fox, Paramount, Universal and Warner Bros., brokered and approved these tobacco endorsement deals for their contract stars.  The studios directly benefitted from national advertising campaigns plugging the studios' stars and latest movies, paid for by the tobacco companies.  In the early 1950s, tobacco companies shifted their marketing dollars to a new medium, television.  But, in April 1970, congress passed the Public Health Cigarette Smoking Act banning the advertising of cigarettes on broadcast media, such as television and radio.  Thus, commercial collaboration with

Hollywood movie producers surfaced again in the 1970s, after cigarette commercials were banned from TV and radio.  From 1970 to at least 1994, major U.S. tobacco companies paid product placement agents millions of dollars to insert tobacco imagery depicting their brands in mainstream Hollywood studio films, which included youth-rated movies, and provided valuable consideration, including cars, cash and advertising deals to Hollywood producers and actors who aided in the placement of tobacco imagery depicting the tobacco companies' brands in their movies.  In the late 1980s and early 1990s, at least two large U.S. tobacco companies failed to report their product placement-related expenditures to the Federal Trade Commission, as required by Congress (Federal Cigarette Labeling and Advertising Act, 5 U.S.C.A. § 1337(b)).

29.  A 2009 WHO Framework Convention on Tobacco Control ("FCTC") policy development handbook states: "Experience shows that whenever tobacco advertising and promotion is restricted in one medium, it migrates to another…Any country seeking to ban or restrict tobacco advertising and promotion must address the issue of smoking on screen or risk having its public health efforts being severely compromised."

30.  In the United States, because of the laws prohibiting tobacco companies from, among other things, advertising in broadcast media, various tobacco settlements, strong anti-smoking public health campaigns and heightened public health awareness of the consequences of smoking (and the fact that tobacco kills half of its regular customers when used exactly as the manufacturer intended), there has been a steady decline in the number of adults who smoke.

31.  While smoking prevalence among adults in the United States and other developed countries is falling, smoking prevalence in many countries in the developing world is climbing. The tobacco industry targets its marketing efforts to the expanding markets - both children and adults - in the developing countries of the world where public health awareness of the dangers of smoking is more limited and the laws against tobacco advertising, and the enforcement of any such laws, are less developed.  At present, over 80% of the more than 1 billion smokers worldwide live in developing countries.

32.  The film industry has a global reach.  Although the films produced in the U.S. represent

only a small portion of the films produced worldwide, the films produced and rated by defendants represent approximately two-thirds of the film market outside the United States.

33.  Consumer spending on filmed entertainment will likely surpass $100 billion in 2017, with emerging markets such as China growing more quickly than established markets such as Japan, the United Kingdom, and the United States.  The rapid spread of multiple media platforms for viewing movies outside of theatres, across cultures and economies, means that exposure to film content is vastly underestimated by movie theatre attendance data alone.

34.  The use of tobacco imagery in films frequently marketed to children under the age of seventeen and which defendants certify and rate as "G," "PG," and "PG-13" that is, as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, provides the tobacco industry with one of the most effective marketing tools to recruit new smokers and nicotine addicts from children and adolescents in the United States and throughout the world, effectively overcoming and circumventing legal restrictions on tobacco industry advertising in the United States.

## VII. TOBACCO USE IN YOUTH-RATED FILMS IS PERVASIVE

35.  Tobacco imagery in youth-rated films is pervasive.  A "tobacco incident" is one occurrence of smoking or other tobacco imagery in a movie.  "Incidents" are a measure of the number of occurrences of smoking or other tobacco imagery in a movie.

36.  In the thirteen-year period from 2003 to 2015, the 1,870 first-run theatrical films in the U.S. that ranked among the weekly top ten films in gross box office earnings (accounting for about 95 percent of ticket sales in any given year) featured 34,600 tobacco incidents (an average of 2,700 tobacco incidents per year).  Fifty-eight percent of the tobacco incidents appeared in films that defendants rated "R," 38 percent appeared in films defendants rated "PG-13," and the remaining 4 percent appeared in films defendants rated "G" or "PG."

37.  Of the nearly 1,100 films with tobacco imagery (i.e., with one or more tobacco incidents in the film), 46 percent were rated "R," 45 percent were rated "PG-13," and 9 percent were rated "G" or "PG."  Altogether, more than half of films with tobacco imagery were rated so

as to be accessible to audiences under the age of seventeen.

38.   In the four-year period 2012 to 2015, the 550 top grossing films in the U.S. featured 9,850 tobacco incidents (an average of 2,500 tobacco incidents per year).  Sixty-two percent of the tobacco incidents appeared in films that defendants rated "R," 37 percent appeared in films defendants rated "PG-13," and the remaining 1 percent appeared in films defendants rated "G" or "PG."   Of the top grossing films rated "PG-13," that is, films for which defendants provided their seal of approval and certification that the films were suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, 46 percent (123 films) featured tobacco imagery.  The 123 youth-rated films with tobacco imagery had a total of 3,768 tobacco incidents.  Youth-rated films with tobacco imagery had an average of 31 tobacco incidents per film.

39.   Marketing and advertising researchers use "impressions" as a measure of advertising messages delivered.  "Tobacco impressions" represent the number of tobacco incidents in a film multiplied by the number of moviegoers in the theatre audience for that film.  The result is used as an index to estimate audiences' total exposure to tobacco imagery on screen.  From 2003 to 2015, top-grossing films delivered some 267 billion in-theatre tobacco impressions to audiences in the "domestic" film market, comprising the United States and English-speaking Canada.  Assuming that, in proportion to population, 92 percent of these impressions were delivered to U.S. audiences, total tobacco impressions delivered in U.S. movie theatres can be estimated at about 245 billion. Of these tobacco impressions, about 45 percent were delivered by films rated "R" by defendants, 51 percent by "PG-13" films, and 4 percent by "G" and "PG" films.  In all, films that defendants rated accessible to audiences under the age of seventeen unaccompanied by a parent or guardian accounted for more than half of the tobacco impressions delivered to U.S. theatre audiences: 135 billion impressions over thirteen years — 10.3 billion impressions per year, on average — not including repeated impressions delivered by these same films on television, home video, and video-on-demand.

40.   In the four-year period from 2012 to 2015, top grossing movies delivered 72 billion

tobacco impressions to U.S. theater audiences. During this four-year period, 49 percent of tobacco impressions were delivered by films defendants rated to be accessible to adolescents, that is "PG-13," and 1 percent by films defendants rated "PG." All youth rated films delivered approximately 36 billion tobacco impressions to US moviegoers — 9 billion tobacco impressions per year, on average — not including impressions delivered by these same films on television, home video, and video-on-demand.

41. Tobacco imagery was featured in half of all top grossing films released in the four years 2012-2015. During that period, approximately 72 percent of films intended for adult audiences, that is, films defendants rated as "R," contained depictions of tobacco use.

42. Within the four-year period from 2012 to 2015, average levels of tobacco incidents in "PG-13" rated films with any tobacco imagery climbed to historic peaks, rivaling or exceeding levels seen in "R" rated films. In fact, each of the major Hollywood studio defendants has produced and distributed top-grossing feature films with substantial amounts of tobacco imagery over the years 2012 to 2015; and through these youth-rated films, the defendants have delivered substantial numbers of tobacco impressions to children under the age of seventeen in the United States:

    a.  Disney released 46 films to theaters nationally, of which 6 films (13 percent) featured tobacco imagery. Of the company's 15 films rated "PG-13," 33 percent featured tobacco imagery. Altogether, Disney's films rated "PG-13" (i) comprised 83 percent of the company's films with tobacco imagery, (ii) carried 99 percent of the company's 290 tobacco incidents, and (iii) delivered more than 99 percent of the company's 5.7 billion tobacco impressions to U.S. theatre audiences of all ages.

    b.  Fox released 73 films to theaters nationally, of which 32 films (44 percent) featured tobacco imagery. Of the company's 29 films rated "PG-13," 41 percent featured tobacco imagery. Altogether, Fox's films rated "PG-13" (i) comprised 38 percent of the company's films with tobacco imagery, (ii)

carried 43 percent of the company's 1,060 tobacco incidents, and (iii) delivered 4.7 billion (49 percent) of the company's 9.5 billion tobacco impressions to U.S. theater audiences of all ages.

c.  Paramount released 38 films to theaters nationally, of which 18 films (47 percent) featured tobacco imagery.  Of the company's 20 films rated "PG-13," 35 percent featured tobacco imagery.  Altogether, Paramount's films rated "PG-13" (i) comprised 39 percent of the company's films with tobacco imagery, (ii) included 28 percent of the company's 620 tobacco incidents, and (iii) delivered 2.5 billion (35 percent) of the company's 7.1 billion tobacco impressions to U.S. theater audiences of all ages.

d.  Sony released 69 films to theaters nationally, of which 43 films (62 percent) featured tobacco imagery.  Of the company's 30 films rated "PG-13," 60 percent featured tobacco imagery.  Altogether, Sony's films rated "PG-13" (i) comprised 42 percent of the company's films with tobacco imagery, (ii) included 31 percent of the company's 1,280 tobacco incidents, and (iii) delivered 4.2 billion (33 percent) of the company's 12.9 billion tobacco impressions to U.S. theater audiences of all ages.

e.  Universal released 79 films to theaters nationally, of which 42 films (53 percent) featured tobacco imagery. Of the company's 32 films rated "PG-13," 44 percent featured tobacco imagery.  Altogether, Universal's films rated "PG-13" (i) comprised 33 percent of the company's films with tobacco imagery, (ii) included 25 percent of the company's 1,110 tobacco incidents, and (iii) delivered 2.0 billion (30 percent) of the company's 6.6 billion tobacco impressions to U.S. theater audiences of all ages.

f.  Warner Bros. released 73 films to theaters nationally, of which 31 films (42 percent) featured tobacco imagery.  Of the company's 36 films rated "PG-13," 36 percent featured tobacco imagery.  Altogether, Warner Bros.' films

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF**

rated "PG-13" (i) comprised 42 percent of the company's films with tobacco imagery, (ii) included 35 percent of the company's 1,790 tobacco incidents, and (iii) delivered 10.3 billion (55 percent) of the company's 18.7 billion tobacco impressions to U.S. theater audiences of all ages.

43.   So-called "independent" film distributors, not members of the MPAA and with no governance role in the MPAA, also released motion pictures with tobacco imagery that contributed to audience exposure. However, during the period 2012 and 2015, the six major Hollywood studio defendants, in their primary business role as creators, producers and distributors of films, accounted for 62 percent of all top-grossing, youth-rated motion pictures with tobacco imagery released to U.S. theaters; 62 percent of tobacco incidents in youth-rated films; and 82 percent — 29.5 billion — of in-theater tobacco impressions delivered by youth-rated films.

44.   Over the entire period, 2003-2015, as the major Hollywood studio defendants were informed repeatedly of the deadly consequences of their youth-rating of films with tobacco imagery, the total number of tobacco incidents in youth-rated films per year, and the number of tobacco incidents per top-grossing youth-rated films, has fluctuated but even at its lowest historical levels has been pervasive.  The total number of tobacco incidents per youth-rated films ranged from a high of 1,985 (2005) to a low of 594 (2010).  The total number of tobacco incidents per youth-rated films over the last four years were: 1,186 (2012), 783 (2013), 1,192 (2014) and 607 (2015).  The number of tobacco incidents per youth-rated film with tobacco imagery ranged from a high of 38 in 2014 to a low of 20 in 2008.  The number of tobacco incidents per youth-rated films with tobacco imagery over the last four years were: 36 (2012), 28 (2013), 38 (2014) and 20 (2015).  The annual tobacco impressions of youth-rated films has also fluctuated based upon the fluctuations in the total number of tobacco incidents per year in youth-rated films, the number of incidents per youth-rated film, and the relative commercial success of individual films and the number of tobacco incidents in those particular films.  While total tobacco impressions in youth-rated films dropped to its historical low in 2015, this was largely

due to the relative commercial failure of the particular films with tobacco incidents.

## VIII. EXPOSURE TO TOBACCO IMAGERY IN FILMS CAUSES CHILDREN TO BECOME SMOKERS

45.   Since 1996 scores of scientific studies in the United States and other nations have concluded that exposure to tobacco imagery in films causes children to become smokers. Numerous studies have also found a dose-response relationship between this exposure, and an adolescent's progression to regular, addicted smoking, with attendant risks of tobacco-induced disease and premature death.  After controlling for other factors that influence tobacco initiation, including such elements as age, friends and family who smoke, ethnicity, socio-economic status, and psycho-social traits, the more tobacco imagery an adolescent watches on screen, the greater the likelihood that child will become a smoker.

46.   In 2008, the National Cancer Institute (NCI) of the U.S. National Institutes of Health, in a comprehensive review of the global peer-reviewed scientific literature, concluded that exposure to depiction of tobacco use in movies is not merely associated with children starting to smoke but, in fact, *causes* children to start smoking: "The total weight of evidence from cross-sectional, longitudinal, and experimental studies indicates a causal relationship between exposure to depictions of smoking in movies and youth smoking initiation."

47.   The NCI also ratified the scientific consensus -- based upon empirical evidence from numerous studies in a variety of countries employing a range of methodologies -- of the existence of a dose response between children's exposure to tobacco imagery in films and smoking by children: the more a child is exposed to tobacco imagery on screen, the more likely it is that a child will start smoking.

48.   In 2012, based upon an even larger body of authoritative, peer reviewed scientific evidence, the U.S. Surgeon General's 2012 report on smoking concluded that exposure to smoking on screen causes kids to smoke: "The evidence is sufficient to conclude that there is a casual relationship between depictions of smoking in the movies and the initiation of smoking among young people."

49.   In its subsequent 2014 Report, the U.S. Surgeon General concluded, based upon current rates, that 5.6 million of all Americans younger than 18 years of age alive today can be expected to die from smoking-related diseases such as lung cancer, stroke and emphysema.  The 2014 Surgeon General Report concluded: "Actions that would eliminate depiction of tobacco use in movies, which are produced and rated as appropriate for children and adolescents, could have a significant effect on preventing youth from becoming tobacco users."

50.   According to the CDC August 22, 2014 fact sheet on Smoking in the Movies: "Giving an R rating to future movies with smoking would be expected to reduce the number of teen smokers by nearly 1 in 5 (18%) and prevent one million deaths from smoking among children alive today."

51.   If defendants adopted an "R" rating for films featuring tobacco imagery today, they would prevent one million children from dying from tobacco related diseases, that is, eighteen percent of the 5.6 million projected future tobacco deaths among children alive today.  And, therefore, defendants' continued certification and rating of films with tobacco imagery as suitable and appropriate for children and adolescents under 17 years of age unaccompanied by a parent or guardian will cause one million American children alive today to die from tobacco-related diseases such as lung cancer, heart disease, stroke and emphysema.  Despite defendants' knowledge of the scientific evidence that defendants' conduct will cause more than three million children and adolescents alive today to become addicted to nicotine and one million to die prematurely from tobacco related diseases, defendants continue to provide their seal of approval, certification and rating that films featuring tobacco imagery are suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian.

52.   In the four-year period from 2012 through 2015, a total of 3 million adolescents ages 12 to 17 started smoking cigarettes.  Thus, as a result of defendants' practice of assigning youth-ratings of "G," "PG," and "PG-13" to films with tobacco imagery, defendants caused 1.1 million adolescents to start smoking cigarettes during the 2012 – 2015 period (37% of the 3 million adolescents that started smoking cigarettes during the four-year period).  Of the 1.1 million

adolescents who started smoking cigarettes between 2012 and 2015 due to their exposure to tobacco imagery in films that defendants rated "G," "PG," or "PG-13," 32 percent of them, that is, 360,000, will eventually die from tobacco induced diseases.

53.  Even assuming additional declines in smoking rates over the next three years, unless and until defendants change their rating system for films with tobacco imagery and rate films with tobacco imagery with an "R" rating, defendants' conduct will cause an additional 200,000 U.S. children under the age of seventeen to become new cigarette smokers every year.  And each year in the future that defendants refuse to rate films with tobacco imagery with the "R" rating, defendants' conduct will cause an additional 64,000 deaths from tobacco induced diseases in future years.

54.  In California alone, a total of 700,000 children and adolescents under the age of seventeen are projected to become smokers during their lifetime and 225,000 of them are projected to become smokers due to their exposure to tobacco imagery in films, based upon the defendants' current rating system.  In California alone, if defendants continue to attach their seal of approval, certification and rating to films with tobacco imagery as being suitable and appropriate for children and adolescents unaccompanied by a parent or guardian, defendants will cause approximately 80,000 deaths from tobacco related disease.  In addition, if defendants continue their current conduct, in California alone the estimated costs of treating tobacco related diseases caused by defendants' conduct will total nearly $2.5 billion.

## IX. THE MPAA RATING SYSTEM

55.  In 1968, the defendants adopted, with a few subsequent changes, the current rating system used by the U.S. motion picture industry.  According to defendants' descriptions, the voluntary rating system was intended to function as the films industry's guardian for the protection of parents and their children.  As described, and in practice since it was established in 1968, the defendants have operated, advertised and held out to the film-going public that MPAA's rating system fulfilled a special and vital function, that is, to: a) advise and warn parents regarding film content that the average parent in the United States would find

inappropriate or unsuitable for their children unaccompanied by a parent or guardian, and b) protect children under the age of seventeen by prohibiting them from entering theatres and viewing films featuring conduct, imagery and language that defendants determine is not suitable or appropriate for children under the age of seventeen unless accompanied by a parent or guardian.

56.   The defendants, together with the independent film creators, producers and distributors, collectively operate an $88 billion business in the United States and worldwide.  Defendants determined that it was in their collective financial interests to voluntarily create, own, finance and operate the MPAA film rating system to function as their industry's guardian to protect parents and children under the age of seventeen in the United States.  The annual operating budget of the MPAA is approximately $70 million.   The major Hollywood studio defendants contribute approximately $65 million (92%) of the MPAA's annual budget as their annual membership dues.  The remaining source of revenue for the MPAA's operations (approximately $5 million) are fees the MPAA charges the film producers for the film rating service and right to display the MPAA's certificate and rating for each film submitted to the MPAA for rating (a large portion of which is also paid by the major Hollywood studio defendants).  Defendants concluded it served their primary, independent commercial interests as creators, producers and distributors and/or exhibitors of films to provide this film rating and advertising standards service to assure parents and children under the age of seventeen that they could trust and repose confidence in defendants that the products that the motion picture industry was selling, and which parents and their children under the age of seventeen were consuming, were suitable and appropriate for children and adolescents.

57.   According to the defendants' written rules and the ratings board that administers the rating system for defendants, the ratings are decided by a full-time Ratings Board located in Los Angeles. There are 10-13 members of the Rating Board who serve for periods of varying length. The MPAA and NATO rules establish the Rating Board — the Classification and Rating Administration ("CARA").  CARA is controlled by defendants and is operated as a division of

the MPAA.  There are no special qualifications for Rating Board membership, except that the members must have a shared parenthood experience and have the capacity to put themselves in the role of most American parents so they can view a film and apply a rating that most parents would find suitable and helpful in aiding their decisions about their children and what films they see.  A copy of the written rating rules is attached as Exhibit 1.

58.  Pertinent portions of the MPAA rules provide:

> The Classification and Rating Administration ("CARA") and the Classification and Rating Appeals Board were established by the Motion Picture Association of America, Inc. ("MPAA") and the National Association of Theatre Owners, Inc. ("NATO") as part of a voluntary system to provide information to parents to aid them in determining the suitability of individual motion pictures for viewing by their children.

> The Rating Board does not determine the content that may be included in motion pictures by filmmakers, nor does it evaluate the quality or social value of motion pictures. By issuing a rating, it seeks to inform parents of the level of certain content in a motion picture (violence, sex, drugs, language, thematic material, adult activities, etc.) that parents may deem inappropriate for viewing by their children. It is not CARA's purpose to prescribe socially-appropriate values or to suggest any evolution of the values held by American parents, but instead to reflect, as sensitively as possible, the current values of the majority of American parents, so that parents benefit from and feel fairly informed by the ratings system.

> Each member of the Rating Board must be a parent and may not have any other affiliation with the entertainment industry. The Chairperson and Senior Raters may have children of any age. Raters must have children between the ages of five and fifteen when they join the Rating Board and must leave the Rating Board when all of their children have reached the age of twenty-one.

> The Chairperson of CARA will develop and maintain a curriculum of relevant materials for the initial training of Raters and for periodic review with them of the standards applied by the majority of American parents to determine the motion picture content suitable for viewing by their children.

59.  According to defendants, the purpose of the rating system is as follows:

> Ratings and rating descriptors issued by CARA are intended to be used by parents to assist them in determining whether the motion picture is appropriate for their children to see and whether their children should be accompanied while seeing the motion picture. In rating a motion picture, the Rating Board evaluates each motion picture in its entirety and considers those aspects of the motion picture that most parents would

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

consider in determining whether that motion picture is suitable for viewing by their children, including mature themes, language, depictions of violence, nudity, sensuality, depictions of sexual activity, adult activities (i.e. activities that adults, but not minors, may engage in legally), and drug use.

CARA assigns a rating to each motion picture. CARA assigns the rating the Rating Board believes would best reflect the opinion of most American parents about the suitability of that motion picture for viewing by their children. When CARA assigns a rating, it also provides a rating descriptor for that rating in order to better inform parents of the elements of the motion picture that caused the motion picture to be given that rating.

60.   The rating system currently in use is described in the defendants' rules as follows:

CARA assigns one of the following ratings, with the following meanings, to each picture:

(1)     *G - General Audience. All Ages Admitted.*

A G-rated motion picture contains nothing in theme, language, nudity, sex, violence or other matters that, in the view of the Rating Board, would offend parents whose younger children view the motion picture. The G rating is not a "certificate of approval," nor does it signify a "children's" motion picture. Some snippets of language may go beyond polite conversation but they are common everyday expressions. No stronger words are present in G-rated motion pictures. Depictions of violence are minimal. No nudity, sex scenes or drug use are present in the motion picture.

(2)     *PG - Parental Guidance Suggested. Some Material May Not Be Suitable For Children.*

A PG-rated motion picture should be investigated by parents before they let their young children attend. The PG rating indicates, in the view of the Rating Board, that parents may consider some material unsuitable for their children, and parents should make that decision.

The more mature themes in some PG-rated motion pictures may call for parental guidance. There may be some profanity and some depictions of violence or brief nudity. But these elements are not deemed so intense as to require that parents be strongly cautioned beyond the suggestion of parental guidance. There is no drug use content in a PG-rated motion picture.

(2)     *PG-13 - Parents Strongly Cautioned. Some Material May Be Inappropriate For Children Under 13.*

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

A PG-13 rating is a sterner warning by the Rating Board to parents to determine whether their children under age 13 should view the motion picture, as some material might not be suited for them. A PG-13 motion picture may go beyond the PG rating in theme, violence, nudity, sensuality, language, adult activities or other elements, but does not reach the restricted R category. The theme of the motion picture by itself will not result in a rating greater than PG-13, although depictions of activities related to a mature theme may result in a restricted rating for the motion picture. Any drug use will initially require at least a PG-13 rating. More than brief nudity will require at least a PG-13 rating, but such nudity in a PG-13 rated motion picture generally will not be sexually oriented. There may be depictions of violence in a PG-13 movie but generally not both realistic and extreme or persistent violence. A motion picture's single use of one of the harsher sexually-derived words, though only as an expletive, initially requires at least a PG-13 rating. More than one such expletive requires an R rating, as must even one of those words used in a sexual context. The Rating Board nevertheless may rate such a motion picture PG-13 if, based on a special vote by a two-thirds majority, the Raters feel that most American parents would believe that a PG-13 rating is appropriate because of the context or manner in which the words are used or because the use of those words in the motion picture is inconspicuous.

(4)     *R - Restricted. Children Under 17 Require Accompanying Parent or Adult Guardian.*

An R-rated motion picture, in the view of the Rating Board, contains some adult material. An R-rated motion picture may include adult themes, adult activity, hard language, intense or persistent violence, sexually-oriented nudity, drug abuse or other elements, so that parents are counseled to take this rating very seriously. Children under 17 are not allowed to attend R-rated motion pictures unaccompanied by a parent or adult guardian. Parents are strongly urged to find out more about R-rated motion pictures in determining their suitability for their children. Generally, it is not appropriate for parents to bring their young children with them to R-rated motion pictures.

*        *        *        *

G.      Every motion picture assigned a rating of PG, PG-13, R or NC-17 by the Rating Board also is assigned a "rating descriptor." This rating descriptor helps guide parents on the type of content that resulted in the motion picture being assigned that rating; modifiers indicate the type and intensity of specific elements in the movie. The rating descriptor does not constitute an exhaustive list of the type of content in the motion picture but reflects only the type of content in the motion picture that is strong enough to merit the rating category assigned to the motion picture. (E.g., a motion picture rated R with a rating descriptor only for "sexual content" also may include language, depictions of violence or other rating relevant elements, but only at a PG-13 or lower level.) The rating descriptor for each rated motion picture is determined by the Chairperson of CARA or the Senior Rater, in conjunction with the Raters who viewed the motion picture, based on the elements of the motion picture identified in the ballots of the Raters who viewed the motion picture as elements that caused the motion picture to receive that rating.

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF**

"H.    After the Rating Board assigns a rating to the motion picture, CARA will inform the rating contact of that rating and the rating descriptor. The rating contact will advise CARA whether the producer or distributor accepts the rating and rating descriptor."

"I.    When the rating and rating descriptor for the motion picture are accepted by the rating contact, CARA will issue a Certificate to the holder of the distribution rights for the motion picture that identifies the producer or distributor of the motion picture that submitted the motion picture for rating, the rating of the motion picture, and the Certificate Number of the rating."

"Rated motion pictures must bear prominently on every copy exhibited or distributed in the United States the number of the Rating Certificate and the official Seal of the MPAA with the words "Certificate Number," followed by the number of the Rating Certificate and the symbol of the rating assigned to the motion picture. To the extent possible, the Seal of the MPAA, the rating and number must be displayed in uniform type, size and prominence."

"The G, PG, PG-13, Rand NC-17 rating symbols and legends are Certification marks registered by the MPAA with the United States Patent and Trademark Office. The rating symbols and legends may not be self-applied and may only be used with the authorization of the MPAA in connection with motion pictures that have been rated by CARA, in accordance with the Rules set forth herein and the Advertising Administration Rules."

### X. IMPOSING A DUTY UPON DEFENDANTS TO INCLUDE DEPICTION OF TOBACCO IMAGERY AS A CRITERIA REQUIRING THE ASSIGNMENT BY THE MPAA OF AN "R" RATING IS FORESEEABLE

61.  At least as early as 2003, defendants were on notice that tobacco imagery in films was not suitable or appropriate for children and adolescents.  In 2006, at least partially in response to four years of accelerating demands from public health and professional medical organizations, parents groups, youth groups, state and municipal health agencies, numerous state attorneys general, and members of the United States Senate that defendants take rapid and substantive steps to eliminate tobacco imagery from films accessible to children and adolescents, and in an apparent attempt to fulfill their responsibilities as the films industry's self appointed guardian,

defendants sought the recommendation of the country's leading public health experts for a proper, reasonable, appropriate and rationally based rating for films with tobacco imagery.

62.  In 2006, the MPAA's then Chairman and CEO, Dan Glickman, asked the Harvard School of Public Health to review the issue, and to provide the MPAA with expert advice and policy recommendations for a rationally based rating for tobacco imagery in films.  A copy of Mr. Glickman's October 5, 2006 letter to Attorney General Curran of Maryland is attached as Exhibit 2.

63.  In response to defendants' request, on February 23, 2007 in Los Angeles, Dr. Barry R. Bloom, then Dean of the Harvard School of Public Health, with the assistance of Dr. Jonathan Samet, at the time professor of epidemiology at Johns Hopkins and who had served as one of the senior scientific editors of three of the U.S. Surgeon General's reports on tobacco and health, reported to the defendants in a closed door meeting and provided this recommendation:

> "Based on the compelling body of available scientific evidence, we make a single, simple recommendation: Take substantive and effective action to eliminate the depiction of tobacco smoking from films accessible to children and youths, and take leadership and credit for doing so. Don't ignore the issue or put a fig leaf on it, like a descriptor on DVDs, that would be the equivalent of the tobacco industry cynically putting smoking warnings on cigarette packages. For industry leadership to have real impact we would hope your message would be clear, simple, and publicly accountable. And we ask all the major studios and guilds to agree to use their leadership to make it their policy."

64.  Thereafter, on May 1, 2007, thirty-one state attorney generals followed up with letters to the MPAA, NATO and major Hollywood studio defendants demanding they take immediate action: "[E]ach time a member of the industry releases another movie that depicts smoking, it does so with the full knowledge of the harm it will bring to children who watch it...[E]liminate the depiction of tobacco smoking from films accessible to children and youth. There is simply no justification for further delay." A copy of the letter from the state attorneys general to one of defendants is attached as Exhibit 3.

65.  On June 2, 2009, Vermont Attorney General William H. Sorrell, former president of the National Association of Attorneys General then chair of its Tobacco Committee wrote

defendants to demand that defendants change the rating of films with tobacco imagery and

follow the recommendations of essentially the entire world's public health experts:

> "This Office and Attorneys General from numerous states have repeatedly called upon the motion picture industry to take a leadership role in protecting the health and lives of our children by eliminating depictions of smoking in movies rated G, PG and PG-13...As the Attorneys General said in their first letter to [then MPAA chief] Jack Valenti in August 2003: 'The motion picture industry is uniquely situated to bring about sweeping change to prevent youth smoking....We are hopeful you will use your best efforts...to rally the motion picture industry to move from being a source of the problem to being recognized as a critically important force in solving the nation's deadly problem of youth smoking....I urge all studios to fulfill the Harvard School of Public Health's recommendation that studios *eliminate* [emphasis in original] the depiction of tobacco use from films accessible to youth. The evidence of its negative consequences is now inescapable. Moreover, as this evidence grows, it is clear that every time the industry releases another movie that depicts smoking, it does so with full knowledge of the deadly harm it will bring to the children who watch it." A copy of the letter is attached as Exhibit 4."

66. On information and belief, the only scientific, medical, public health and evidence-

based advice and recommendations that defendants have ever sought or received with regard to

how to rate films with tobacco imagery have been recommendations substantively similar to

recommendations by the Harvard School of Public Health, (assisted by an expert in tobacco and

health at the School of Public Health at Johns Hopkins University and one of the senior scientific

editors of three of the U.S. Surgeon General Reports on Smoking), the attorneys general of

thirty-one states, the American Medical Association, the American Heart Association, the

American Academy of Pediatrics, the American Heart Association, the American Lung

Association, the American Public Health Association, the New York PTA, the WHO, Los

Angeles County Department of Health Services, New York State Department of Health, and

others who in turn rely upon independent, authoritative, peer-reviewed research on adolescents'

exposure to on-screen smoking and its observed impact.  All of these recommendations have

consistently and continuously recommended that defendants include tobacco imagery as one of

the criteria requiring a film to be rated as "R" to protect children under the age of seventeen from

becoming addicted smokers and ultimately dying prematurely from a tobacco-induced disease.

67. The defendants formed the film rating system for the express purpose of serving as the

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

industry's guardian: to warn parents of foreseeable inappropriate and unsuitable content in the films being rated and to prevent children under the age of seventeen from exposure to films that in its role as the industry's guardian it foresees as inappropriate and not suitable for children under the age of seventeen who are unaccompanied by a parent or guardian.

68.   The entire stated purpose for which defendants created and have operated the MPAA film rating system, as defendants themselves describe it and hold it out to the consuming public, is to foresee and warn parents and children of content that is not appropriate or suitable for children under the age of seventeen in the films it rates and to protect children under the age of seventeen by prohibiting them from entering theatres and viewing films featuring conduct, imagery and language that defendants determine is not suitable or appropriate for children under seventeen years of age unless accompanied by a parent or guardian.  Defendants created and have operated the film rating service for the purpose of inducing consumers, and particularly parents of children under the age of seventeen, to rely upon the defendants' film ratings.

69.   Thus, it is foreseeable that a duty would be imposed upon defendants, and the rating system they operate to exercise reasonable care in determining the rating to be assigned to tobacco imagery in films intended for children and adolescents, to accurately assign ratings to film featuring tobacco imagery and to refrain from falsely and misleadingly issuing their seal of approval, certification and rating of films featuring tobacco imagery as suitable and appropriate for children and adolescents unaccompanied by a parent or guardian and from failing to disclose material information regarding the deadly risks of tobacco imagery in the films it rates.

## XI.  THERE IS A COMPELLING STATE, NATIONAL AND GLOBAL INTEREST IN PROTECTING CHILDREN AND ADOLESCENTS FROM BECOMING ADDICTED TO TOBACCO

70.   There is a compelling parental interest, as well as a compelling state, federal, and global public health interest, in preventing children and adolescents from smoking and becoming addicted to tobacco, suffering from tobacco-induced diseases and premature death.

71.   The compelling public health interest in protecting children and adolescents from addiction to tobacco and consequent grave physical harm is reflected in, among other things: a)

federal law prohibiting tobacco companies from advertising tobacco products in broadcast media; b) federal law prohibiting the sale and distribution of tobacco products to minors; c) federal law prohibiting tobacco companies from sponsoring athletic, social or cultural event using tobacco brand names; d) the Master Settlement Agreement prohibition on tobacco marketing that targets youth and on paid tobacco product placement or branding in entertainment media and venues accessible to young people; e) state laws making it illegal to sell tobacco to minors, for minors to buy tobacco, or for minors to possess tobacco (such as California Civil Code §§ 308), state laws prohibiting contributing to the delinquency of minors (such as California Civil Code §§ 272, *et seq.*), and state laws prohibiting the maintenance of private and public nuisances (such as California Civil Code § 3479, *et seq.*), state laws protecting the rights of children and recognizing that until children reach the age of majority they are vulnerable to undue influences and presumptively less able to make informed decisions including, without limitation, state laws tolling the statute of limitations for any claims by children until they reach the age of majority (such as California Civil Code §§ 352, 335 and 6500 *et seq.*);  f)  thirty-four U.S. Surgeon General reports detailing the devastating personal and social costs of tobacco use and second hand smoke; g) federal and state laws prohibiting smoking in certain public places; h) the National Cancer Institute's *Smoking and Health Monograph 19*, which concludes that exposure to on-screen tobacco imagery causes adolescents to start smoking; i) the implementing guidelines for Article 13 of the global WHO Framework Convention on Tobacco Control (FCTC) which list film as a promotional vehicle for tobacco, and the WHO advisory that FCTC parties assign an adult rating to future films with tobacco imagery; j) the letters sent by attorneys general of thirty-one states stating that defendants are knowingly harming young people when they release youth-rated films with tobacco content, and their urgent demands that defendants eliminate smoking from youth-rated films; k) the findings and recommendations of the U.S. Surgeon General, American Medical Association, American Academy of Pediatrics, American Heart Association, American Legacy Foundation, American Lung Association, American Public Health Association, Campaign for Tobacco-Free Kids, the New York PTA, the Los Angeles

Department of Health, New York State Department of Health, and other local, national and international authorities, based on independent research evidence, that defendants give an "R" rating to future films with imagery, except films that depict actual historical persons who actually smoked and films that unambiguously depict the dire health consequences of tobacco use; and l) the 2014 CDC Fact Sheet on Smoking in the Movies concluding that defendants' continued certification and rating of films featuring tobacco imagery as suitable and appropriate for children and adolescents, if not changed, will cause one million premature deaths from tobacco related disease in this generation of U.S. children.

**XII. IT IS REASONABLE TO IMPOSE A DUTY UPON DEFENDANTS TO ACT WITH DUE CARE IN RATING FILMS DEPICTING TOBACCO USE FOR CHILDREN UNDER SEVENTEEN YEARS OF AGE**

72.   Since defendants created the film rating service in 1968, defendants have voluntarily assumed responsibility for providing parents and children with advice and advance cautionary warnings regarding film content that defendants determine is not suitable or appropriate for children under seventeen years of age unaccompanied by a parent or guardian.  In their self-appointed role as advising parents of inappropriate and unsuitable film content, and prohibiting the admission of children under the age of seventeen to theatres and exposure to film content that the defendants determine is not suitable or appropriate for children and adolescents unless accompanied by a parent or guardian, defendants hold themselves out as performing a vital and important function of informing parents' decisions and protecting children.  The rating system created and operated by defendants has contributed to the ongoing commercial success of the U.S. film production, distribution and exhibition industry dominated by defendants.

73.   Defendants' film rating and certification system has never been, and is not now, merely limited to providing information to parents to aid parents in their determination of what is suitable or appropriate film content to be viewed by their children under seventeen years of age. Defendants' film rating system involves an evaluation and determination by defendants that films featuring certain conduct, imagery and language is not appropriate or suitable for children under the age of seventeen unless accompanied by a parent or guardian.  Defendants do not

merely provide information to the film consumers and allow the film consumers to make their own choices about what film content is or is not suitable and appropriate.  Instead, defendants determine, based upon standards they select, that certain conduct, imagery and language is not suitable and appropriate for children under the age of seventeen and defendants *prohibit* children under the age of seventeen who are not accompanied by a parent or guardian from admission to theatres to see films featuring such conduct, imagery and language.   Defendants have voluntarily assumed the responsibility of prohibiting children under seventeen years of age from exposure to film content that they determine is not suitable or appropriate for children under the age of seventeen.

74.   Thus, it is reasonable to impose a duty upon defendants to exercise due care, and to rate films accurately and according to their own voluntarily adopted standards — standards which they hold out to the public for the purpose of inducing the special trust, reliance and confidence of children and adolescents and their parents.

75.   Defendants have been operating the current rating system since 1968 and requiring them to act with reasonable care with regard to rating films with tobacco imagery will not impose any additional, material administrative burden upon defendants.

76.   Imposing a duty upon defendants to act with due care in rating films with tobacco imagery, is reasonable and necessary to serve the compelling public interests in protecting vulnerable and impressionable children and adolescents from becoming addicted to nicotine, and suffering debilitating tobacco related illnesses and premature death as adults, and in reducing the enormous social costs (both direct medical costs and loss of productivity) resulting from tobacco-induced disease.

77.   The defendants operate the MPAA film rating service as a private organization and participation in the ratings system operated by defendants is voluntary. The defendants are free to change their rating system, rules and procedures, and to cease operations entirely. No governmental authority has any involvement whatsoever in the operation of defendants' film rating service.  Any independent producer or distributor desirous of making and distributing a

film is free to do so without submitting the product to the MPAA for a rating. Thus, requiring defendants to assign films with tobacco imagery an "R" rating involves no First Amendment Constitutional issues.

78.  Requiring defendants to assign films with tobacco imagery an "R" rating would not result in any censorship whatsoever. Anyone is free to create, produce, distribute, or exhibit any film containing as much tobacco imagery as he or she believes necessary for artistic, political or other reason, or on a whim. Requiring defendants to assign films with tobacco imagery an "R" rating will only ensure that films with tobacco imagery are appropriately and accurately rated and certified as unsuitable and inappropriate for children under the age of seventeen unless accompanied by a parent or guardian.

79.  Defendants' voluntary, self-imposed rating system has always influenced or restrained the artistic or creative choices of writers, directors, editors and producers of films. From the inception of defendants' film rating system through the present, films have been and continue to be conceived, written, directed and edited to obtain the rating that provides a film its best opportunity for commercial success with its intended audiences. This development and production process currently involves modifying or limiting strong language and images of violence, sexual imagery, nudity, drug use, and minors in adult situations or encouraged to use substances restricted to adults, for the purpose of obtaining a "PG-13" rating if the film's intended audience includes the lucrative under age seventeen market. For example, under the current rating system, a film with certain expletives if used more than once (or once in a sexual context) will be required to be assigned an "R" rating. As a result, if the film is intended for distribution to the under-seventeen market, the film will be written and edited so that it does not include more than one of the restricted expletives or none used in a sexual context. Thus, requiring defendants to act with due care to assign films with tobacco imagery an "R" rating would not result in any additional significant restriction upon artistic or creative freedoms beyond the restrictions currently imposed by defendants' voluntary, self-imposed existing rating system. Requiring defendants to act with due care to assign films with tobacco imagery an "R"

1  rating would constitute no different restriction on artistic or creative freedom than the current

2  rating system which prohibits writers, directors, editors and producers from using certain

3  expletives more than once (or once in a sexual context) if the film is intended to be marketed to

4  children and adolescents.

5      80.   Requiring defendants to act with due care to assign an "R" rating to films featuring

6  tobacco imagery would not impose any duties or liability of any kind whatsoever upon

7  defendants (or any other person) in their capacities or roles as writers, directors, creators,

8  producers, distributors or exhibitors of any Constitutionally protected speech in any film.  The

9  claims asserted in this lawsuit relate to defendants' conduct in their completely separate,

10  independent and voluntarily assumed role as the self-appointed guardian of the movie industry

11  for the benefit of parents and children, that is, for defendants' negligent, and false and

12  misleading, certification, and rating of the films.

13      81.   The claims asserted in this lawsuit relate to defendants' film rating service, and only

14  defendants' film rating service.   Any involvement defendants may or may not have had in the

15  creation, production or distribution of any particular film is irrelevant to the conduct that is the

16  subject of this lawsuit (except to the extent that it demonstrates an improper financial motivation

17  for defendants' conduct).  Defendants are liable for the negligent and false and misleading

18  certification and rating of each and every film rated by defendants regardless of whether the film

19  was created, produced or distributed by one of the defendants or one of the independent

20  companies with no affiliation with the defendants' film rating service.

21      82.   The incremental restriction of artistic or creative freedom arising from requiring

22  defendants to act with due care and accurately in rating films with tobacco imagery – if any --

23  beyond the restrictions already resulting from the defendants' operation of the current rating

24  system, would have a limited effect, would only apply to those films intended for unrestricted

25  viewing by children and adolescents unaccompanied by a parent or adult guardian, and would

26  have no effect on films intended for adult audiences.  Moreover, any such restriction is not a

27  restriction on the artistic or creative freedom of anyone to create, produce, distribute or exhibit

28

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

any film with any tobacco imagery content — it is simply and solely a restriction necessary to prevent the negligent and false and misleading certifying and rating of the content of films intended for youth audiences.   There is no social utility in negligent or false or misleading certifying, rating or advertising of films that cause devastating physical harm and death to children and adolescents.

83.   Any slight burden upon defendants in their voluntary role as the self-appointed guardians of the film industry for the special protection of minors and parents of minor children for the purpose of preventing children under the age of seventeen becoming addicted to tobacco, and suffering debilitating illnesses and premature deaths as adults, is reasonable and necessary to ensure that the rating system accurately and truthfully certifies and rates films featuring tobacco imagery as "R" and unsuitable and inappropriate for children and adolescents under the age of seventeen unaccompanied by a parent or guardian.

84.   It is reasonable to impose a duty upon defendants to act with due care and accurately in rating films with tobacco imagery intended for children under the age of seventeen unaccompanied by a parent or guardian because defendants have voluntarily assumed the duty and responsibility to act as the guardians of the film industry for the benefit of parents and children under the age of seventeen.   Defendants have voluntarily created and operated the rating system because they concluded it was in their commercial interests to do so.   Defendants voluntarily and deliberately solicited the trust and confidence of parents and children under the age of seventeen by holding out their rating system as the guardian of the movie industry for the special protection of parents and children, and defendants succeeded in obtaining the trust and confidence of the parents and children for whose benefit and protection the defendants created and have operated the rating system. Having assumed the duty and responsibility of providing this service, it is reasonable to impose upon defendants the duty to act with due care and accurately in assigning "R" ratings for films featuring tobacco imagery that are unsuitable and inappropriate for children and adolescents under the age of seventeen unaccompanied by a parent or guardian.

### XIII. DEFENDANTS' REFUSAL TO ASSIGN AN R-RATING TO FILMS WITH TOBACCO IMAGERY IS NEGLIGENT AND A BREACH OF FIDUCIARY DUTY

85.   Defendants are directly responsible for and control the entire ratings system, including, without limitation, creating and revising the rating system rules, the ratings classifications, the general criteria or standards for determining whether any particular language, conduct or imagery of a film requires that the film be assigned the "R," "PG-13," "PG," or "G" rating, and the administration of the ratings system by CARA, a division of the defendant MPAA, as described above.

86.   Under defendants' explicit ratings rules if a film uses the word "F***" more than once, or once in a sexual context, the film must be assigned the "R" rating and defendants prohibit children and adolescents (without a parent or guardian) from entry into the movie theatre to view the film because defendants have determined that the film is not suitable and appropriate for viewing by children and adolescents.  However, if the film contains tobacco imagery, defendants' rating system assigns the film a youth rating and defendants certify and rate the film as suitable and appropriate for viewing by children and adolescents unaccompanied by a parent or guardian.

87.   As alleged above, defendants sought and have been provided with the scientific evidence that tobacco imagery in films causes children to become smokers, addicted to nicotine and suffer tobacco related diseases and premature death.  Defendants sought and have been provided with recommendations from the world's leading public health scientists and numerous public health professionals (including the U.S. Surgeon General's Reports on Tobacco, the National Cancer Institute, Center for Disease Control, attorneys general of thirty-one states, the American Medical Association, the American Heart Association, the American Academy of Pediatrics, the American Lung Association, the American Public Health Association, and the WHO), that because of the proven and deadly risk to children and adolescents of tobacco imagery in films, that films with tobacco imagery should be rated "R."  Despite the known, deadly risk posed to children and adolescents by viewing tobacco imagery in films, the defendants refuse to change the criteria for the rating system by requiring the "R" rating for any

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF**

film featuring tobacco imagery.  Instead, defendants continue to certify and rate films with tobacco imagery as suitable and appropriate for children and adolescents unaccompanied by a parent or guardian.

88.  No reasonable parent or, at the very least, most American parents, if provided with the scientific evidence, and the advice and recommendations from the world's leading public health scientists, the entire U.S. medical community, and the leading public health institutions in the United States (the CDC, NCI, NIH, the U. S. Surgeon General, and the WHO) regarding the devastating and deadly consequences of certifying and rating films featuring tobacco imagery as suitable and appropriate for children — information known to the MPAA and defendants for more than a decade — would consider certifying and rating such films as suitable and appropriate for children and adolescents unaccompanied by a parent or guardian.  An independent national survey conducted in 2006 found that 70 percent of adults support R-rating films that show smoking, unless the film clearly demonstrates the dangers of smoking or it is necessary to represent smoking of a real historical figure.  Any independent, reasonable parent, or at the very least, a majority of independent American parents, provided the same scientific evidence and the recommendations of the world's leading medical and public health professionals and institutions that was provided to and known to the defendants, would assign an "R" rating to films featuring tobacco imagery.

89.  Defendants' rating system that assigns the "R" rating to films that use the word "F***" more than once (or once in a sexual context) based upon a determination by defendants that it is not suitable or appropriate for children and adolescents to hear the word "F***" more than once (or once in a sexual context), while simultaneously certifying and rating films with tobacco imagery as suitable and appropriate for children and adolescents unaccompanied by a parent or guardian is grossly negligent, false and inaccurate, and a breach of defendants' statutory and fiduciary duties.

90.  Defendants' continued refusal to treat tobacco imagery in films as requiring an "R" rating is grossly negligent, false and inaccurate, and a breach of defendants' statutory and

1   fiduciary duties.

2       91.  By any measure or standard including a) defendants' stated purpose for creating and

3   operating the rating system, b) the known standards or criteria defendants have explicitly adopted

4   as the standards or criteria for classifying films by their content, or c) any rational or reasonable

5   standard, defendants' continued certification and rating of films featuring tobacco imagery as

6   suitable and appropriate for children and adolescents unaccompanied by a parent or guardian, is

7   grossly negligent, false and inaccurate, and a breach of defendants' statutory and fiduciary

8   duties.

9   **XIV.  DEFENDANTS' RATING OF FILMS FEATURING TOBACCO IMAGERY AS**
10   **SUITABLE AND APPROPRIATE FOR CHILDREN AND ADOLESCENTS IS**
    **KNOWINGLY AND INTIONALLY FALSE AND MISLEADING**

11       92.  As alleged above, beginning no later than 2007, defendants' rating of films with

12   tobacco imagery as suitable and appropriate for children under the age of seventeen was false

13   unaccompanied by a parent or guardian, inaccurate and misleading because the scientific

14   evidence established that adolescents' viewing films featuring tobacco imagery caused them to

15   become smokers, and has caused and will continue to cause, hundreds of thousands of children

16   to suffer from tobacco related diseases and premature death as adults.

17       93.  Beginning no later than 2007, defendants deliberately and intentionally and with total

18   disregard for the physical harm and deadly consequences of their conduct to hundreds of

19   thousands of children and adolescents in the United States and millions of children and

20   adolescents throughout the rest of the world, rated films with tobacco imagery as suitable and

21   appropriate for children and adolescents unaccompanied by a parent or guardian with full

22   knowledge that such ratings were false, inaccurate and misleading because defendants have

23   known, based upon the scientific evidence, that rating films featuring tobacco imagery as

24   suitable for youth audiences, causes adolescents to become smokers, and to suffer tobacco

25   related diseases and premature death as adults.

26       94.  At various times over the last ten years, each of the major Hollywood studio defendants

27   publicly adopted corporate policies for the express purpose of reducing tobacco imagery in

28

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

1    youth-rated films as a result of: a) the scientific evidence that tobacco imagery in youth-rated

2    films was causing children to become smokers and causing them to die prematurely from

3    tobacco related diseases, and b) the repeated warnings of the state attorneys general, public

4    health scientists, medical associations, the CDC and the U.S. Surgeon General of the deadly

5    consequences of defendants' youth-rating system for films with tobacco imagery.  Each of the

6    major Hollywood Studio defendants succeeded in nearly completely eliminating tobacco

7    imagery in youth-rated films for a limited one or two-year period following the adoption of these

8    corporate policies.   However, these policies have many loopholes and exceptions (for example,

9    Disney's policy does not apply to films that Disney distributes under its Touchstone Pictures

10   label, such as the films produced by DreamWorks and distributed by Disney through Touchstone

11   under a seven-year agreement, during which Disney made available to Dream Works a revolving

12   credit facility of $250 million), and despite a limited impact immediately following the adoption

13   of these separate policies, all of the major Hollywood studio defendants resumed production and

14   distribution of youth-rated films with tobacco imagery.  As a result, tobacco imagery in youth-

15   rated films returned to historical levels.

16        95.   The fact that the each of the major Hollywood studio defendants adopted corporate

17   policies to reduce tobacco imagery in youth-rated films demonstrates that each of the defendants

18   had full and complete knowledge: a) that tobacco imagery in youth-rated films causes

19   adolescents to become addicted to nicotine, and b) of the deadly consequences of defendants'

20   youth-rating of films with tobacco imagery.  Defendants adoption of these corporate polies, and

21   the fact that these corporate policies were effective in eliminating tobacco imagery in films

22   produced by the major Hollywood studios for a brief period following the adoption of the

23   policies, demonstrates that the defendants are fully capable of eliminating tobacco imagery in

24   youth-rated films.  It also demonstrates that defendants' claims that producers, directors, and

25   writers must be permitted to use tobacco imagery in youth-rated films for the sake of artistic

26   freedom are pretextual and plainly false.  The collective failure of individual company policies to

27   permanently sustain reductions in tobacco imagery in youth-rated films demonstrates that

28

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

-35-

individual corporate policies will not eliminate tobacco imagery in youth-rated films.   The only effective way to eliminate tobacco imagery in youth-rated films is for defendants to stop providing their seal of approval, certification and rating of "G," "PG," and "PG-13" to films with tobacco imagery that are unsuitable and inappropriate for children and adolescents under the age of seventeen unless accompanied by a parent or guardian and to assign the "R" rating to such films.

96.   In 2006, as alleged in paragraphs 62 through 63, above, defendants solicited and obtained expert advice and recommendations from the leading public health scientists regarding the public health consequences of youth-ratings of films featuring tobacco imagery and how films with tobacco imagery should be rated.  The recommendation, as alleged above, was to eliminate tobacco imagery in films accessible to children and youths.  In fact, the recommendation also explicitly advised defendants: "Don't ignore the issue or put a fig leaf on it, like a descriptor on DVDs, that would be the equivalent of the tobacco industry cynically putting smoking warnings on cigarette packages."   The defendants with full knowledge of the deadly consequences of their youth-rating of films with tobacco imagery, not only refused to follow the expert advice they had sought by refusing to change the rating system to require the "R" rating for films that included tobacco imagery, but they actually chose to do exactly what the expert advise cautioned them against doing.  Starting in 2007, defendants changed the MPAA film rating system purportedly to include smoking imagery as one of the "descriptors" utilized in conjunction with the "G," "PG," "PG-13," and "R" certification or rating.  The descriptors include additional information e.g., "violence/disturbing images," "strong sexual content including dialogue," "non-stop action violence," or "brooding, dark violence."  Defendants purported to include smoking imagery as one of the descriptors to be included with the rating so as to warn and advise parents and other consumers that the film contained tobacco imagery.  See, May 10, 2007 letter from Dan Glickman to thirty-one State Attorneys General a copy of which is attached as Exhibit 5.

97.   However, since the adoption of the additional smoking descriptors as part of the rating

**CLASS ACTION COMPLAINT FOR DECLARATORY
JUDGMENT, INJUNCTION AND OTHER RELIEF**

-36-

system, the MPAA refused to include a smoking descriptor in the ratings it issued in almost 9 out of every 10 (88%) youth-rated, top grossing films with tobacco imagery.  And, in those rare instances where the MPAA actually included a smoking descriptor in a youth-rated film with tobacco imagery, they did so more frequently to films that were produced and/or distributed by the independent film producers compared with the films produced and/or distributed by the major Hollywood studio defendants.  Moreover, even in those rare instances in which defendants included a smoking descriptor in youth-rated films, defendants never disclosed in the rating or rating descriptors that defendants knew that exposure to tobacco imagery in films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely.

98.  Defendants' failure, nearly 90% of the time, to disclose to parents of children under the age of seventeen that youth-rated films contained tobacco imagery and defendants failure, 100% of the time, to disclose to parents of children under the age of seventeen that exposure to tobacco imagery in films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, is grossly negligent, false and inaccurate, and a breach of defendants' statutory and fiduciary duties.

99.  Defendants rating films with tobacco imagery as "G," "PG," and "PG-13" is also false and misleading because defendants falsely hold out the rating system as an accurate rating system utilizing specially selected, trained and informed raters acting separately and independently from defendants' control.  Defendants assert that ratings are assigned by raters specially selected based upon, among other things, their independence from defendants and the movie industry, and specially trained and informed by relevant material developed and maintained by defendants.  As defendants stated: "Ratings are assigned by an independent board of parents with no past affiliation to the movie business. Their job is to rate each film as they believe a majority of American parents would rate it, considering relevant themes and content." www.filmratings.com  (website 2010).

100. The ratings assigned to films under defendants' rating system are falsely and

misleadingly described as accurate and assigned by an independently operated rating system and assigned by properly trained and informed independent raters.  Contrary to defendants' claims, however, defendants exercise complete control over the entire rating system, including the rules of the rating system, the criteria to be used — or not used — by the CARA Raters when rating individual films, the training of the raters and the scientific information and expert recommendations pertinent to the raters' task that are provided to, or withheld from, the raters.

101.  Defendants use their control over the entire rating system and process to refuse to: a) include tobacco imagery as one of the explicit criteria requiring the CARA Raters to assign an "R" rating to films featuring tobacco imagery for the purpose of ensuring that films featuring tobacco imagery are not assigned the "R" rating, and b) to disclose that youth-rated films contain tobacco imagery and that that exposure to tobacco imagery in films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely.

102.  Defendants refuse to include tobacco imagery as one of the explicit criteria in defendants' general standards requiring the CARA Raters to assign an "R" rating, for the improper purpose of obtaining inaccurate and deadly "PG-13" ratings for films featuring tobacco imagery for no apparent reason or purpose other than defendants' financial gain.  Defendants approve, adopt and ratify the inaccurate and false "G," "PG," and "PG-13" rating of every film with tobacco imagery by affixing the defendants' MPAA "G," "PG," or "PG-13," seal or certificate, to every film produced or distributed by each of the Hollywood studio defendants, by expending millions of dollars in marketing and advertising each such film as being suitable and appropriate for youth audiences unaccompanied by a parent or guardian, and by profiting from the improper youth-ratings, with full knowledge of the deadly consequences of such inaccurate and false youth-ratings.

103.  Defendants, in their primary, but separate and independent businesses as the creators, producers, distributors and exhibitors of a majority of the films that are rated by defendants' film rating service, generate substantially more revenue from "PG-13" ratings than from films with

"R" ratings, on average.  Defendants have significant financial incentives to use their control of the film rating service to improperly, negligently, and falsely issue the MPAA seal of approval, certification and rating that films are suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian despite the fact that such films feature unsuitable and inappropriate tobacco imagery.

104.  On information and belief, from at least 2007 through the present, Defendants have knowingly and falsely used and controlled the rating system to rate films featuring tobacco imagery as suitable and appropriate for children under seventeen years of age unaccompanied by a parent or guardian because youth-rated films, in contrast to "R" rated films, are substantially more lucrative to defendants in their separate roles and capacities as the creators, producers, distributors and exhibitors of those films.

## XV. DEFENDANTS' NEGLIGENCE, INTENTIONAL CONDUCT AND BREACH OF STATUTORY AND FIDUCIARY DUTIES IS CONTINUING TO CAUSE CHILDREN UNDER THE AGE OF SEVENTEEN TO SUFFER IRREPARABLE PHYSICAL INJURY AND PREMATURE DEATHS AS ADULTS

105.  Defendants' refusal to assign films with tobacco imagery an "R" rating has caused, and if not changed will continue to cause, millions of children in the United States and throughout the world to become smokers and addicted to tobacco, and to suffer immediate and irreparable physical injury and premature death as adults.  Defendants' conduct is ongoing and, in the absence of declaratory and injunctive relief is likely to continue.

## XVI. PRELIMINARY AND PERMANENT INJUNCTVE RELIEF IS NECESSARY TO PREVENT CONTINUING IMMEDIATE AND IRREPARABLE PHYSICAL INJURY AND PREMATURE DEATH TO CHILDREN UNDER THE AGE OF SEVENTEEN

106.  A preliminary and permanent injunction requiring defendants to assign an "R" rating to films with tobacco imagery is necessary to prevent continuing immediate and irreparable physical injury and premature death for millions of children in the United States and throughout the world and to prevent plaintiff's and Class members' children from viewing films with tobacco imagery that defendants continue to rate and certify as suitable and appropriate for children and adolescents under the age of seventeen unaccompanied by a parent or guardian.

**XVII. THE FACTS RELATING TO NAMED PLAINTIFF TIMOTHY FORSYTH**

107. Mr. Forsyth is the parent of two minor children.  In the last four years Mr. Forsyth has purchased theatre tickets to take his two sons, aged twelve and thirteen, to numerous live action first run films assigned youth-ratings by defendants, including the following films containing tobacco imagery:

a. Spectre, on December 24, 2015 for $24.75, bearing defendants' MPAA rating "PG-13 for intense sequences of action and violence, some disturbing images, sensuality and language" certificate, or seal of approval, number 49732;

b. Dumb And Dumber To, on November 16, 2014 for $43.00, bearing defendants' MPAA rating "PG-13 for crude and sexual humor, partial nudity, language and some drug references" certificate, or seal of approval, number 49175,;

c. Transformers: Age of Extinction, on July 15, 2015 for $44.00, bearing defendants' MPAA rating "PG-13 for intense sequences of sci-fi violence and action, language and brief innuendo" certificate, or seal of approval, number 49153;

d. X-Men: Days of Future Past, on May 26, 2014 for $20.75, bearing defendants' MPAA rating "PG-13 for sequences of intense sci-fi violence and action, some suggestive material, nudity and language" certificate, or seal of approval, number 48698;

e. The Amazing Spider Man 2, on May 4, 2014 for $29.25, bearing defendants' MPAA rating "PG-13 for sequences of sci-fi action/violence" certificate, or seal of approval, number 46601;

f. The Hobbit: The Desolation of Smaug, on December 15, 2013 for $52.50, bearing defendants' MPAA rating "PG-13 for extended

sequences of intense fantasy action violence, and frightening images" certificate, or seal of approval, number 48745;

g.  Iron Man 3, on May 25, 2013 for $26.50, bearing defendants' MPAA rating "PG-13 for sequences of intense sci-fi action and violence throughout, and brief suggestive content" certificate, or seal of approval, number 48254;

h.  The Hobbit: An Unexpected Journey, on December 14, 2012 for $40.75, bearing defendants' MPAA rating "PG-13 for extended sequences of intense fantasy action violence, and frightening images" certificate, or seal of approval, number 47983,;

i.  Men In Black 3, on June 3, 2012 for $36.00, bearing defendants' MPAA rating "PG-13 for sci-fi action violence, and brief suggestive content" certificate, or seal of approval, number 46600; and

j.  The Woman in Black, on February 17, 2012 for $23.75, bearing defendants' MPAA rating "PG-13 for thematic material and violence/disturbing images" certificate, or seal of approval, number 47187.

108.  Mr. Forsyth relied upon defendants' seal of approval, certification and rating of "PG-13" that the forgoing films were suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian when he purchased tickets for the films listed above.

109.  If the defendants had not negligently, falsely and misleadingly and in breach of their statutory and fiduciary duties, assigned youth ratings of "PG-13" to films featuring tobacco imagery, and had not deliberately failed to disclose that the films contained tobacco imagery and the fact that exposure to films with tobacco imagery results in a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, Mr. Forsyth would not have purchased theatre tickets for those youth-rated films featuring tobacco imagery, his children would not have been exposed to the tobacco imagery in

those films and he would not have been exposed to an increased risk of his children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely as a result of the exposure to the tobacco imagery in those films.

110.  As a result of defendants' improper conduct, defendants have been enriched and plaintiff has been injured and suffered damage in the amount of the purchase price for the theatre tickets purchased in the four years prior to the filing of this complaint and the risk of his children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely as a result of the exposure to tobacco imagery in those films.

## XVIII. CLASS ALLEGATIONS

111. Plaintiff Mr. Forsyth brings this action pursuant to the Federal Rules of Civil Procedure 23 (b)(2), on his behalf and on behalf of the following Class:

> All parents and legal guardians of children under the age of seventeen in the United States whose children have seen or may see films featuring tobacco imagery but assigned a youth rating, that is, "G", "PG" or "PG-13" rating by defendants (the "Nationwide Injunctive And Declaratory Class").

112.    Plaintiff Mr. Forsyth brings this action pursuant to the Federal Rules of Civil Procedure 23 (b)(3), on his own behalf and on behalf of the following Class:

> All parents and legal guardians of children in the United States who, within the last four years, have paid for theatre tickets for their children under the age of seventeen for films featuring tobacco imagery but assigned a youth rating, that is, "G", "PG" or "PG-13" rating by defendants (the "Nationwide Ticket Purchase Class").

113.  Plaintiff Mr. Forsyth brings this action pursuant to the Federal Rules of Civil Procedure 23(b)(2) on his own behalf and on behalf of the following state-wide Sub-Class:

> All parents and legal guardians of children under the age of seventeen in California whose children have seen or may see films featuring tobacco imagery but assigned a youth rating, that is, "G", "PG" or "PG-13" rating by defendants (the "California Injunctive and Declaratory Sub-Class")

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

114. Plaintiff Mr. Forsyth brings this action pursuant to the Federal Rules of Civil Procedure 23(b)(3) on his own behalf and on behalf of the following state-wide Sub-Class:

> All parents and legal guardians of children in California who, within the last four years, have paid for theatre tickets for their children under the age of seventeen for films featuring tobacco imagery but assigned a youth rating, that is, "G", "PG" or "PG-13" rating by defendants (the "California Ticket Purchase Sub-Class).

115. Excluded from the foregoing Classes and Sub-Classes are defendants, and their officers and directors.

116. The Classes and Sub-Classes consist of thousands of individuals, making joinder impractical.

117. The claims of plaintiff are typical of the claims of the respective Classes. The claims of the plaintiff and the respective Classes are based on the same legal theories and arise from the same improper conduct, resulting in the same injury to the plaintiff and the respective Classes.

118. The respective Classes have a well-defined community of interest. The defendants have acted and failed to act on grounds generally applicable to the plaintiff and the respective Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the respective Classes.

119. There are many questions of law and fact common to the claims of plaintiff and the respective Class members, and those questions predominate over any questions that may affect only individual class members within the meaning of Federal Rules of Civil Procedure and 23(b)(2) and 23(b)(3).

120. Common questions of fact and law affecting members of the Classes include, but are not limited to, the following:

> k. Whether defendants owe a legal duty to the Classes when rating films with tobacco imagery to exercise reasonable care, to assign accurate ratings and a fiduciary duty.

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

l.    Whether defendants are breaching their duties to the Classes by continuing to rate films with tobacco imagery as suitable for children under seventeen years of age unaccompanied by a parent or guardian.

m.    Whether defendants rating of films with tobacco imagery as suitable for children under seventeen years of age unaccompanied by a parent or guardian is false and misleading.

n.    Whether defendants knowingly and intentionally assigned false and misleading youth-ratings, that is, "G", "PG" and/or "PG-13" ratings, to films featuring tobacco imagery.

o.    Whether defendants' breach of duty by rating films with tobacco imagery as suitable and appropriate for children under seventeen years of age unaccompanied by a parent or guardian has caused injury to the plaintiff and Classes.

p.    Whether a preliminary and permanent injunction should be entered to stop defendants from continuing to rate films with tobacco imagery as suitable and appropriate for children under seventeen years of age unaccompanied by a parent or guardian.

q.    Whether additional equitable relief is appropriate as a remedy for defendants' practice of certifying that films containing tobacco imagery are suitable and appropriate for children under seventeen years of age unaccompanied by a parent or guardian.

121.  Common questions of fact and law affecting members of the Sub-Classes include, but are not limited to, the following:

a.    Whether defendants' conduct described herein constitutes an unlawful, unfair or fraudulent business practice in violation of California Business and Professions Code §§ 17200, et seq.

b.   Whether defendants' conduct described herein constitutes false advertising in violation of California Business and Professions Code §§ 17500, et seq.

c.   Whether defendants' conduct described herein is a private and/or public nuisance in violation of California Civil Code §§ 3479, et seq.

d.   Whether defendants owe a legal duty to the Sub-Classes when rating films with tobacco imagery to exercise reasonable care, to assign accurate ratings and a fiduciary duty.

e.   Whether defendants are breaching their duties to the Sub-Classes by continuing to rate films with tobacco imagery as suitable for children under seventeen years of age unaccompanied by a parent or guardian.

f.   Whether defendants rating of films with tobacco imagery as suitable for children under seventeen years of age unaccompanied by a parent or guardian is false and misleading.

g.   Whether defendants knowingly and intentionally assigned false and misleading youth-ratings to films featuring tobacco imagery.

h.   Whether defendants' breach of duty by rating films with tobacco imagery as suitable and appropriate for children under seventeen years of age unaccompanied by a parent or guardian has caused injury to the plaintiff and Sub-Classes.

i.   Whether a preliminary and permanent injunction should be entered to stop defendants from continuing to rate films with tobacco imagery as suitable and appropriate for children under seventeen years of age unaccompanied by a parent or guardian.

j.   Whether additional equitable relief is appropriate as a remedy for defendants' practice of certifying that films containing tobacco imagery

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF**

-45-

are suitable and appropriate for children under seventeen years of age unaccompanied by a parent or guardian.

122.  Absent a class action, most of the respective class members of the Class and Sub-Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

123. There is a compelling national and global public health interest in obtaining class-wide relief.

124. Plaintiff will fairly and adequately represent and protect the interests of the members of the respective Classes and Sub-Classes.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other respective Class and Sub-Class members, and have the financial resources to do so.  Neither plaintiff nor his counsel have any interest adverse to those of the other respective Class and Sub-Class members.

## COUNT I
### (Negligence)

### Rating and Certifying Films With Tobacco Imagery
### As Suitable and Appropriate for Children Under The Age of Seventeen Is Negligent

125. Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

126.  As alleged herein, defendants had a duty to use due care in rating and certifying films with tobacco imagery and in properly disclosing material facts relating to those films.

127.  As alleged herein, defendants rating and certifying films featuring tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian and failing to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children

and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely is negligent.

128.   As alleged herein, as a proximate result of defendants' negligent rating and certification of films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, plaintiff and the Nationwide Injunctive And Declaratory Judgment Class, Nationwide Ticket Purchase Class, California Injunctive and Declaratory Judgment Sub-Class, and California Ticket Purchase Sub-Class members have been injured and suffered damage including purchasing theatre tickets and having been exposed to an increased risk of their children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely.

**COUNT II**
**(Negligence – Voluntary Undertaking)**

**Defendants Breached Their Duty, Voluntarily Undertaken,**
**To Exercise Reasonable Care In Rating and Certifying Films With Tobacco Imagery**
**As Suitable and Appropriate For Children Under The Age of Seventeen**

129.   Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

130.   As alleged herein, defendants had a duty to use due care in rating and certifying films with tobacco imagery and in properly disclosing material facts relating to those films.

131.   As alleged herein, defendants breached their duty, voluntarily undertaken, to use due care in rating and certifying films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian.

132.   As alleged herein, as a proximate result of defendants' negligent certification and rating of films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, plaintiff and the Nationwide Injunctive And Declaratory Judgment Class, Nationwide Ticket Purchase Class, California Injunctive and Declaratory Judgment Sub-Class, and California Ticket Purchase Sub-Class members have been

injured and suffered damage including purchasing theatre tickets and having been exposed to an increased risk of their children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely.

**COUNT III**
**(Fiduciary Duty)**

**Defendants Breached Their Fiduciary Duty By Rating and**
**Certifying Films With Tobacco Imagery As**
**Suitable and Appropriate For Children Under The Age of Seventeen**

133. Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

134. As alleged above, including paragraphs 56, 67, 68, 72 and 84, defendants have expended millions of dollars to create, maintain, market and advertise the film rating service to serve as the guardian of their $88 billion dollar film business. Defendants have deliberately attempted and succeeded in encouraging the film going public and particularly the parents of children under the age of seventeen to depend upon, to trust, and to rely upon defendants' film rating service, as an accurate, reliable, and trustworthy source for critically important information regarding the content of films and the health and safety of their children. Defendants assure the public, and particularly parents of children under the age of seventeen, that they can trust the rating service because the ratings are performed by raters that are independent of the film industry and, on an ongoing basis, specially trained, educated and informed about any issues that a reasonable parent would consider important. Defendants adopted a film rating system where defendants determine whether children under the age of seventeen without a parent or guardian are *permitted* or *prohibited* from viewing the film. Defendants know that consumers, and particularly parents of children under the age of seventeen, rely solely upon the defendants' film rating service as the source of critical information regarding the content of films and whether to allow their children to view films with or without a parent or guardian.

135. Defendants owe the public, and particularly the parents of children under the age of seventeen, a fiduciary duty with regard to the rating of films with tobacco imagery.

136.  As alleged herein, defendants breached their fiduciary duty in rating and certifying films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian and by failing to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely.

137.  As alleged herein, as a result of defendants' breach of fiduciary duty by rating and certifying films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, plaintiff and the Nationwide Injunctive And Declaratory Judgment Class, Nationwide Ticket Purchase Class, California Injunctive and Declaratory Judgment Sub-Class, and California Ticket Purchase Sub-Class members have been injured and suffered damage including purchasing theatre tickets and having been exposed to an increased risk of their children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely.

## COUNT IV
### (Fraudulent Misrepresentation)

**Defendants Deliberately and Intentionally Falsely and Misleadingly Rated and Certified Films Featuring Tobacco Imagery As Suitable and Appropriate For Children Under The Age of Seventeen**

138.  Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

139.  As alleged herein, defendants deliberately and intentionally falsely rated and certified films featuring tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian.

140.  Plaintiff and the Class members justifiably relied upon defendants' ratings and certifications in purchasing theatre tickets.  If defendants had accurately, and not falsely and misleadingly rated and certified films with tobacco imagery with youth ratings, and if defendants had not failed to disclose that youth-rated films contained tobacco imagery and that exposure to

tobacco imagery in youth-rated films causes a serious increased risk that children and

adolescents will become addicted to nicotine, suffer tobacco related diseases and die

prematurely, plaintiff and the Class members would not have purchased theatre tickets and

would not have been exposed to an increased risk of their children becoming addicted to

nicotine, developing tobacco related diseases and dying prematurely.

141.   As alleged herein, as a result of defendants' false and misleading rating and

certification of films with tobacco imagery as suitable and appropriate for children under the age

of seventeen unaccompanied by a parent or guardian, plaintiff and the Nationwide Injunctive

And Declaratory Judgment Class, Nationwide Ticket Purchase Class, California Injunctive and

Declaratory Judgment Sub-Class, and California Ticket Purchase Sub-Class members have been

injured and suffered damage including purchasing theatre tickets and having been exposed to an

increased risk of their children becoming addicted to nicotine, developing tobacco related

diseases and dying prematurely.

**COUNT V**
**(Unfair Competition)**

**Violation of California Business & Professions Code § l7200, *et seq.* on behalf of the**
**California Sub-Classes**

142.   Plaintiff incorporates by reference all of the above allegations as if fully set forth

herein.

143.   The Unfair Business Practices Act proscribes unfair business competition and defines

the same to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California

Business & Professions Code §§17200, *et seq.*

144.   Defendants violated, and continue to violate this proscription as set forth above

including, without limitation, by violating California Penal Code §§ 272 and 308, California

Civil Code § 3479 and California Business & Professions Code § 17500, *et seq.*

145.   Plaintiff justifiably relied upon defendants' ratings and certifications in purchasing

theatre tickets and allowed his children to view films with tobacco imagery.  If defendants had

accurately, and not falsely and misleadingly rated and certified films with tobacco imagery, and if defendants had not failed to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, plaintiff would not have purchased theatre tickets, nor would he have allowed his children to view those youth-rated films featuring tobacco imagery, nor would he have suffered an increased risk of his children becoming addicted to nicotine and developing tobacco related diseases. Sub-Class members were also likely to be deceived by defendants' ratings and certifications and, but for defendants' ratings and certifications, and defendants' failure to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, Sub-Class members would not have purchased theatre tickets, nor would they have allowed their children to view those youth-rated films featuring tobacco imagery, nor would they have suffered an increased risk of their children becoming addicted to nicotine and developing tobacco related diseases.

146.   Defendants, through their acts of unfair competition, have injured and obtained money from Plaintiff and members of the proposed Sub-Classes.   Plaintiff has been injured by Defendants' conduct, as have members of the Sub-Classes.  If defendants had not unfairly, unlawfully and fraudulently rated and certified films with tobacco imagery with a youth-rating, plaintiff and Sub-Classes would not have purchased theatre tickets to those youth-rated films featuring tobacco imagery.   If defendants had not unfairly, unlawfully and fraudulently rated and certified films with tobacco imagery with a youth-rating, plaintiff and the Sub-Class members would not have viewed those youth-rated films featuring tobacco imagery and suffered an increased risk of becoming addicted to nicotine, suffering tobacco related diseases and dying prematurely.  Plaintiff and the members of the Sub-Classes request that the Court permanently enjoin defendants from continuing their improper practice of rating and certifying films with tobacco imagery as suitable and appropriate for children under the age of seventeen

1    unaccompanied by a parent or guardian.

2    147.  Defendants' conduct, as set forth above, is likely to deceive members of the public

3    and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

4    Defendants' conduct is ongoing and, in the absence of declaratory and injunctive relief is likely

5    to continue.

6    148.  Plaintiff and members of the Sub-Classes have also lost money or property from their

7    purchase of movie tickets in an amount to be proven at trial as a result of defendants' unlawful,

8    unfair, and fraudulent conduct.

9    149.  Plaintiff and the California Injunctive and Declaratory Sub-Class and California Ticket

10   Purchase Sub-Class members ask that this Court restore the money improperly taken from them

11   by defendants, enjoin defendants from continuing their illegal practices as set forth herein, and

12   pay attorneys' fees and costs pursuant to, inter alia, Cal. Civ. Proc. § 1021.5.

13                                       **COUNT VI**
14                                  **(False Advertising)**

15   **Violation of California Business & Professions Code § 17500, *et seq*. on behalf of the**
16                            **California Sub-Classes**

17   150.  Plaintiff incorporates by reference all of the above allegations as if fully set forth

18   herein.

19   151.  As alleged herein, defendants have assigned false and misleading youth ratings to

20   films featuring tobacco imagery and have falsely rated and certified such films as suitable and

21   appropriate for children under the age of seventeen unaccompanied by a parent or guardian.

22   152.  Plaintiff justifiably relied upon defendants' ratings and certifications in purchasing

23   theatre tickets and allowed his children to view films with tobacco imagery and, if defendants

24   had accurately, and not falsely and misleadingly rated and certified films with tobacco imagery,

25   and if defendants had not failed to disclose that youth-rated films contained tobacco imagery and

26   that exposure to tobacco imagery in youth-rated films causes a serious increased risk that

27   children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die

28

**CLASS ACTION COMPLAINT FOR DECLARATORY**
**JUDGMENT, INJUNCTION AND OTHER RELIEF**

prematurely, plaintiff would not have purchased theatre tickets, nor would have allowed his children to view those youth-rated films featuring tobacco imagery, nor would he have suffered an increased risk of his children becoming addicted to nicotine and developing tobacco related diseases.  Sub-Class members were also likely to be deceived by defendants' ratings and certifications and, but for defendants' ratings and certifications, and defendants' failure to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, Sub-Class members would not have purchased theatre tickets, nor would have allowed their children to view those youth-rated films featuring tobacco imagery, nor would they have suffered an increased risk of their children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely.

153.  Plaintiff and Sub-Class members of the Class have lost money or property from their purchase of movie tickets in an amount to be proven at trial as a result of defendants' unlawful, unfair, and fraudulent conduct.

154.  Plaintiff and the California Injunctive and Declaratory Sub-Class and California Ticket Purchase Sub-Class members ask that this Court restore the money improperly taken from them by defendants, enjoin defendants from continuing their illegal practices as set forth herein, and pay attorneys' fees and costs pursuant to, inter alia, Cal. Civ. Proc. § 1021.5.

## COUNT VII
### (Negligent Misrepresentation)

### Defendants Breached Their Duty
### To Exercise Reasonable Care In Rating and Certifying Films With Tobacco Imagery
### As Suitable and Appropriate For Children Under The Age Of Seventeen

155.  Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

156.  As alleged herein, defendants had a duty to use due care in rating and certifying films

with tobacco imagery and in properly disclosing material facts relating to those films.

157.   As alleged herein, defendants breached their duty to use due care in rating and certifying films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian.

158.   As alleged herein, and according to defendants' own written rules, defendants issued their ratings and certifications with the intent and purpose of informing, guiding and inducing plaintiff and the class to act in reliance upon defendants' ratings and certifications in determining whether to purchase tickets and to view films for their children under the age of seventeen.

159.   Plaintiff and the Class members justifiably relied upon defendants' ratings and certifications in purchasing theatre tickets and viewing films with tobacco imagery and, if defendants had accurately, and not falsely and misleading rated films with tobacco imagery, and if defendants had not failed to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, plaintiff and the Class members would not have purchased theatre tickets, nor would have allowed their children to view those youth-rated films featuring tobacco imagery, nor would they have suffered an increased risk of their children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely.

160.   As a result of defendants' negligent certification and rating of films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, plaintiff and the Nationwide Injunctive and Declaratory Class, Nationwide Ticket Purchase Class, California Injunctive and Declaratory Sub-Class, and California Ticket Purchase Sub-Class members have been injured and suffered damage.

**COUNT VIII**
**(Private and Public Nuisance)**

**Violation of California Civil Code § 3479, *et seq.* on behalf of the Sub-Classes**

161.   Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

162.   According to the scientific evidence, if defendants continue their current rating of films with tobacco imagery, defendants' conduct will kill approximately one million children.

163.   Defendants' certification and rating of films featuring tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, and defendants' continuing failure to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely is a public nuisance under §§ 3480 *et seq* and a private nuisance under §§ 3481 *et seq.*

164.   Plaintiff has been injured by defendants' conduct, as have members of the Classes.  If defendants had not rated films with tobacco imagery with a youth-rating, and if defendants had not failed to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, plaintiff and the Sub-Class members would not have purchased theatre tickets to those youth-rated films featuring tobacco imagery.   If defendants had not rated films with tobacco imagery with a youth-rating, and if defendants had not failed to disclose that youth-rated films contained tobacco imagery and that exposure to tobacco imagery in youth-rated films causes a serious increased risk that children and adolescents will become addicted to nicotine, suffer tobacco related diseases and die prematurely, plaintiff and the Sub-Class members would not have purchased theatre tickets, nor would have allowed their children to view those youth-rated films featuring tobacco imagery, nor would they have suffered an increased risk of their children becoming addicted to nicotine, developing tobacco related diseases and dying prematurely.  Plaintiff and the members of the California Injunctive and Declaratory Sub-Class and the California Ticket Purchase Sub-Class members request that the Court permanently enjoin

defendants from continuing their improper practice of rating and certifying films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian, and that this Court award such other and further relief as the Court determines is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes and Sub-Classes, request the following relief:

1. That the Court enter an order certifying the Classes, appointing plaintiff as the representative of the Classes, and appointing counsel for Plaintiff as counsel for the Classes;

2. That the Court enter an order declaring that the actions of defendants, as set out above, as well as in other respects, constitutes a breach of defendants' duties and violates the law in the respects alleged;

3. That the Court enter a judgment declaring that defendants' failure to assign films with tobacco imagery an "R" rating, except if the presentation of tobacco clearly and unambiguously reflects the dangers and consequences of tobacco use or is necessary to represent the smoking of a real historical figure who actually used tobacco, is negligent, false and misleading, and a breach of fiduciary duty;

4. That the Court enter an order declaring that the actions of defendants, as set forth above, violate California Business and Professions Code § 17200, et seq.

5. That the Court enter an order declaring that the actions of defendants, as set forth above, violate California Business and Professions Code § 17500, et seq.

6. That the Court enter a preliminary and permanent injunction requiring defendants:

   (a) to assign new films with tobacco imagery released to theaters an "R" rating, except if the presentation of tobacco clearly and unambiguously reflects the dangers and consequences of tobacco use or is necessary to represent the smoking of a real historical figure who actually used tobacco;

   (b) to certify that nobody associated with the production received anything of value from anyone in exchange for using or displaying any tobacco products;

(c)   to include evidence-based anti-smoking ads before any film with smoking exhibited or distributed in any medium;

(d)   to end identification of any tobacco brands in non-documentary films;

(e)   to prohibit tobacco imagery in any advertisement for any film;

(f)   such other and further relief that the Court deems appropriate;

7.   That the Court enter a judgment for the members of the Federal Rules of Civil Procedure 23(b)(3) Class and Sub-Class members against defendants, jointly and severally, as follows:

(a)   Damages in an amount, in excess of $5 million, to compensate Plaintiff and the Class and Sub-Class members for the amount paid to purchase theatre tickets for admission to films with youth ratings that featured tobacco imagery from 2012 through the date of trial;

(b)   Damages in an amount, in excess of $5 million, as warranted by the evidence as the unjust financial benefit obtained by defendants resulting from defendants' breach of fiduciary duty and false and misleading rating of films featuring tobacco imagery;

(c)   Punitive damages in an amount in excess of $5 million sufficient to punish defendants for their long standing and continuing practice of certifying and rating films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian despite defendants' knowledge of the deadly consequences of such certification and rating to hundreds of thousands of children and adolescents who became nicotine addicts and have or will suffer the devastating effects of tobacco-related diseases including lung cancer, heart disease, stroke and emphysema and premature death as a result of defendants' false and misleading certification and rating of films and breach of fiduciary duty;

(d)   Such other and further remedial relief for the Class members as the Court determines is necessary and appropriate as a result of the 1.1 million children and adolescents whose addiction to nicotine was caused by defendants' negligent, false and misleading and improper rating and certification of films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian; and

(e)   Restitution, in an amount in excess of $5 million, to Plaintiff and the Sub-Class members pursuant to Business and Professions Code §§ 17200, et seq. and 17500, et seq.

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF**

8.      That the Court award plaintiff and the Class and Sub-Classes their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

9.      That the Court award such other and further relief as may be necessary or appropriate.

Dated:  February 25, 2016                    **KELLER GROVER LLP**

                                        By:    */s/Jeffrey F.Keller*
                                             JEFFREY F. KELLER
                                             *One of the Attorneys for Plaintiff*
                                             TIMOTHY FORSYTH
                                             and the Putative Class

JEFFREY F. KELLER (SBN 148005)
jfkeller@kellergrover.com
CAREY G. BEEN (SBN 240996)
cbeen@kellergrover.com
SARAH R. HOLLOWAY (SBN 254134)
sholloway@kellergrover.com
**KELLER GROVER, LLP**
1965 Market Street
San Francisco, California 94103
Tel: (415) 543-1305 /Fax: (415) 543-7861


DAVID SCHACHMAN (pending *PRO HAC VICE*)
**LAW OFFICES OF DAVID SCHACHMAN, P.C.**
55 West Monroe Street, Suite 2970
Chicago, Illinois 60603
Telephone: (312) 427-9500
Facsimile: (312) 268-2425
ds@schachmanlaw.com



JOHN G. JACOBS (pending *PRO HAC VICE*)
jgjacobs@jacobskolton.com
BRYAN G. KOLTON (pending *PRO HAC VICE*)
bgkolton@jacobskolton.com
**JACOBS KOLTON, CHTD.**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 268-2425


*Attorneys for Plaintiff and the Putative Class*

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff demands a trial by jury on all counts for which a jury trial is permitted.

Dated:  February 25, 2016                    **KELLER GROVER LLP**


By:   _/s/Jeffrey F. Keller_
        JEFFREY F. KELLER

*One of the Attorneys for Plaintiff*
TIMOTHY FORSYTH
and the Putative Class