GLENN D. POMERANTZ (SBN 112503)
glenn.pomerantz@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
ACHYUT J. PHADKE (SBN 261567)
achyut.phadke@mto.com
ADAM I. KAPLAN (SBN 268182)
adam.kaplan@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

*Attorneys for Defendants Motion Picture Association of America, Inc., The Walt Disney Company, Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLC, and Warner Bros. Entertainment Inc.*

K. LEE MARSHALL (SBN 277092)
klmarshall@bryancave.com
ROGER MYERS (SBN 146164)
roger.myers@bryancave.com
ALEXANDRA WHITWORTH, (SBN 303046)
alex.whitworth@bryancave.com
BRYAN CAVE LLP
560 Mission Street, Suite 2500
San Francisco, California 94105
Tel: (415) 675-3400 /Fax: (415) 675-3434

*Attorneys for Defendant National Association of Theatre Owners*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

TIMOTHY FORSYTH, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

vs.

MOTION PICTURE ASSOCIATION OF AMERICA, INC., et al.,

Defendants.

Case No. 3:16-cv-00935-RS

**DEFENDANTS' NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CIV. PROC. CODE § 425.16 *ET SEQ.*, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Date: June 9, 2016
Time: 1:30 pm
Place: Courtroom 3, 17th Floor
Judge: Hon. Richard Seeborg

## TABLE OF CONTENTS

Page

NOTICE OF MOTIONS AND MOTIONS ..... 1

QUESTIONS PRESENTED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

INTRODUCTION ..... 2

BACKGROUND ..... 4

I. The CARA Ratings System ..... 4

A. CARA's Rating Board and Guidelines ..... 4

B. CARA's Response to Public Health Concerns Relating to Tobacco Imagery in Motion Pictures ..... 5

II. Parents Who Want Detailed Information Regarding Tobacco Imagery in Movies Have Publicly Available Resources that Provide Such Information ..... 6

III. The Complaint ..... 6

ARGUMENT ..... 7

I. The Complaint Should Be Stricken Under California's Anti-SLAPP Statute ..... 7

A. Plaintiff's Claims Arise from Acts in Furtherance of the Right to Free Speech in Connection with a Public Issue ..... 8

B. Plaintiff Cannot Demonstrate a Probability of Prevailing on Any Claims ..... 11

1. The First Amendment Bars Plaintiff's Claims, All of Which Seek to Impose Liability Based on CARA's Protected Opinions ..... 11

2. Plaintiff's Common Law and Statutory Claims All Fail as a Matter of Law ..... 14

(a) Plaintiff's Negligent Misrepresentation Claim (Count VII) Fails ..... 14

(b) Plaintiff's Fraudulent Misrepresentation Claim (Count IV) Fails ..... 20

(c) Plaintiff's Negligence Claims (Counts I and II) Fail ..... 21

(d) Plaintiff's Breach of Fiduciary Duty Claim (Count III) Fails ..... 21

(e) Plaintiff's Nuisance Claim (Count VIII) Fails ..... 22

(f) Plaintiff's False Advertising Law Claim (Count VI) Fails ..... 23

**TABLE OF CONTENTS**
**(continued)**

**Page**

(g) Plaintiff's Unfair Competition Law Claim (Count V) Fails ........... 24

II. The Complaint Should Be Dismissed Under Rule 12(b)(6) .............................................. 25

CONCLUSION ........................................................................................................................ 25

-ii-

3:16-cv-00935-RS

DEFS.' SPECIAL MOT. TO STRIKE PURSUANT TO CAL. ANTI-SLAPP STATUTE AND MOT. TO DISMISS

# TABLE OFAUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864 (8th Cir. 2005) .......... 13

*Benefiel v. Exxon Corp.*, 959 F.2d 805 (9th Cir. 1992) .......... 19

*Brown v. Entm't Merc. Ass'n*, 564 U.S. 786 (2011) .......... 14

*Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007) .......... 12, 13

*In re Cty. of Orange*, 245 B.R. 138 (C.D. Cal. 1997) .......... 11, 15

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) .......... 18, 19

*Doe v. Gangland Prods., Inc.*, 730 F.3d 946 (9th Cir. 2013) .......... 8, 10, 11

*Fevinger v. Bank of Am., N.A.*, 2014 WL 1338301 (N.D. Cal. Mar. 31, 2014) .......... 14

*First Equity Corp. v. Standard & Poor's Corp.*, 670 F. Supp. 115 (S.D.N.Y. 1987) .......... 2

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414 (9th Cir. 2014) .......... 8, 10

*Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL 4209399 (N.D. Cal. Nov. 26, 2007) .......... 15

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) .......... 10

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .......... 4

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) .......... 2, 11

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) .......... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995) ........ 12, 13

*Rodriquez v. Panayiotou*,
314 F.3d 979 (9th Cir. 2002) ........ 11

*Rogers v. Home Shopping Network, Inc.*,
57 F. Supp. 2d 973 (C.D. Cal. 1999) ........ 8

*Rosado v. eBay Inc.*,
53 F. Supp. 3d 1256, 1264 (N.D. Cal. 2014) ........ 23

*Ruiz v. Gap, Inc.*,
622 F. Supp. 2d 908 (N.D. Cal. 2009) ........ 19

*Schaeffer v. Gregory Vill. Partners, L.P.*,
105 F. Supp. 3d 951 (N.D. Cal. 2015) ........ 22

*Shaker v. Nature's Path Foods, Inc.*,
2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ........ 23, 24

*Team Enters., LLC v. W. Inv. Real Estate Trust*,
647 F.3d 901 (9th Cir. 2011) ........ 22

*Thomas v. Fry's Elecs., Inc.*,
400 F.3d 1206 (9th Cir. 2005) ........ 3

*Time Warner Entm't Co., L.P. v. F.C.C.*,
93 F.3d 957 (D.C. Cir. 1996) ........ 10

*Turcios v. Carma Labs., Inc.*,
296 F.R.D. 638 (C.D. Cal. 2014) ........ 18

*Winter v. G.P. Putnam's Sons*,
938 F.2d 1033 (9th Cir. 1991) ........ 17

*Young v. Facebook, Inc.*,
2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ........ 16

*ZL Techs., Inc. v. Gartner, Inc.*,
709 F. Supp. 2d 789 (N.D. Cal. 2010) ........ 12

**STATE CASES**

*Bailey v. Huggins Diagnostic & Rehab. Ctr., Inc.*,
952 P.2d 768 (Colo. App. 1997) ........ 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Bernardo v. Planned Parenthood Fed'n of Am.*,
115 Cal. App. 4th 322 (2004)....................23, 24

*Blatty v. New York Times Co.*,
42 Cal. 3d 1033 (1986)....................11

*CalPERS v. Moody's Investor Service, Inc.*,
226 Cal. App. 4th 643 (2014)....................10, 11

*Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*,
354 S.W.3d 234 (Mo. Ct. App. 2011)....................13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)....................24

*City of Costa Mesa v. D'Alessio Invs., LLC*,
214 Cal. App. 4th 358 (2013)....................9

*Club Members for an Honest Election v. Sierra Club*,
45 Cal. 4th 309 (2008)....................7

*Comm. on Children's Television, Inc. v. General Foods Corp.*,
35 Cal. 3d 197 (1983)....................21, 22

*Desilets on Behalf of Desilets v. Clearview Reg'l Bd. of Educ.*,
266 N.J. Super. 531 (App. Div. 1993)....................17

*DuPont Merck Pharm. Co. v. Super. Ct.*,
78 Cal. App. 4th 562 (2000)....................9

*Gentry v. eBay, Inc.*,
99 Cal. App. 4th 816 (2002)....................14

*Guglielmi v. Spelling-Goldberg Prods.*,
25 Cal. 3d 860 (1979)....................10

*Hoffman v. 162 N. Wolfe LLC*,
228 Cal. App. 4th 1178 (2014)....................20

*Holcomb v. Wells Fargo Bank, N.A.*,
155 Cal. App. 4th 490 (2007)....................21

*Jackson v. AEG Live, LLC*,
233 Cal. App. 4th 1156 (2015)....................15, 16, 21

*Khan v. Shiley, Inc.*,
217 Cal. App. 3d 848 (1990)....................19, 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Kronemeyer v. Internet Movie Data Base, Inc.*,
150 Cal. App. 4th 941 (2007)........................................23

*Melton v. Boustred*,
183 Cal. App. 4th 521 (2010)........................................22

*Nygard, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027 (2008)........................................9

*Oakland Raiders v. Nat'l Football League*,
131 Cal. App. 4th 621 (2005)........................................22

*Okun v. Morton*,
203 Cal. App. 3d 805 (1988)........................................20

*Olson v. Children's Home Soc'y of Cal.*,
204 Cal. App. 3d 1362 (1988)........................................18

*Pierce v. Lyman*,
1 Cal. App. 4th 1093 (1991)........................................21

*Renewable Res. Coal., Inc. v. Pebble Mines Corp.*,
218 Cal. App. 4th 384 (2013)........................................8

*Rosenberg v. Harwood*,
[2012] 39 Media L. Rep. (BNA) 1965, 2011 WL 3153314 (Utah Dist. Ct. 2011)....................17

*Shopoff & Cavallo LLP v. Hyon*,
167 Cal. App. 4th 1489 (2008)........................................19

*Small v. Fritz Companies, Inc.*,
30 Cal. 4th 167 (2003)........................................20

*Tamkin v. CBS Broad., Inc.*,
193 Cal. App. 4th 133 (2011)........................................9, 10

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015)........................................18

*Yanase v. Auto. Club of So. Cal.*,
212 Cal. App. 3d 468 (1989)........................................15

*Yellow Creek Logging Corp. v. Dare*,
216 Cal. App. 2d 50 (1963)........................................20

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**CONSTITUTIONAL PROVISIONS**

First Amendment .......... *passim*

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) .......... 1, 4, 8, 25

Fed. R. Civ. P. 12(c) .......... 7

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq*. .......... 24

Cal. Bus. & Prof. Code § 17500 *et seq*. .......... 23, 24

Cal. Civ. Code § 3479 .......... 24

Cal. Civ. Proc. Code § 425.16 *et seq*. .......... 1, 3, 7, 8, 10

Cal. Penal Code § 272 .......... 24

Cal. Penal Code § 308 .......... 24

**OTHER AUTHORITIES**

http://smokefreemovies.ucsf.edu/ .......... 6

http://www.scenesmoking.org/ .......... 6

https://www.commonsensemedia.org .......... 6

-vii- 3:16-cv-00935-RS

DEFS.' SPECIAL MOT. TO STRIKE PURSUANT TO CAL. ANTI-SLAPP STATUTE AND MOT. TO DISMISS

## NOTICE OF MOTIONS AND MOTIONS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 9, 2016 or as soon thereafter as the matter may be heard, in Courtroom No. 3 – 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg, United States District Judge, Defendants Motion Picture Association of America, Inc. ("MPAA"); The Walt Disney Company, Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLC, and Warner Bros. Entertainment Inc. (collectively the "Studio Defendants"); and National Association of Theatre Owners ("NATO," and collectively with the MPAA and the Studio Defendants, "Defendants") will, and hereby do, move the Court (1) to strike the Complaint in its entirety pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 *et seq.*, or (2) to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

The grounds for the Motions are that (1) the Complaint targets activity protected under the anti-SLAPP statute—the formulation and application of movie ratings, which express opinions regarding rated motion pictures that are the subject of widespread public interest and concern—and Plaintiff cannot meet his burden of establishing a probability of success on the merits as to any of his claims; and (2) Plaintiff in all events has failed to plausibly allege any claim for relief.

These Motions are based upon this Notice of Motions and Motions; the attached Memorandum of Points and Authorities; all other materials supporting this Motion or the Reply in support thereof; all pleadings on file in this matter; and any other materials or argument the Court may receive at or before the hearing on this matter.

## QUESTIONS PRESENTED

1. Should the Court strike Plaintiff's Complaint under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 *et seq.*?

2. Should the Court dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6)?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The Complaint is a misguided attempt to upend basic tort principles and core First Amendment protections to force the Classification and Rating Administration ("CARA")—the movie ratings body that the MPAA and NATO jointly operate—to change the opinions it expresses through its movie ratings system. Plaintiff alleges that CARA has made actionable misrepresentations and committed other torts because it does not automatically give an "R" rating to every movie that contains even a single image of tobacco use. But CARA has expressly said that it does not apply a mandatory R rule because CARA "do[es] not believe such a step would further the specific goal of providing information to parents" about movies their children should see. (Compl. Ex. 5 at 6.)[1] Plaintiff's claims fail as a matter of law for multiple reasons.

*First*, Plaintiff targets CARA's opinions, in particular CARA's opinion that it does not believe a mandatory R rule is appropriate. CARA does not apply ratings to "prescribe socially-appropriate values" but rather to "assign[] the rating [it] believes would best reflect the opinion of most American parents about the suitability of that motion picture for viewing by their children." (*Id*. Ex. 1 at 1, 6.) CARA's criteria for and application of its ratings are expressions of opinion. The First Amendment provides those opinions with "full constitutional protection" against civil liability. *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 20 (1990). The First Amendment does not allow Plaintiff to use a tort action to change the opinions that CARA expresses.

*Second*, even apart from the First Amendment issues, the Complaint is incurably defective under state law. Plaintiff cannot point to any misrepresentation of fact. CARA has never stated that a rating lower than R means that a motion picture will not contain depictions of tobacco use. On the contrary, CARA has been clear for nearly a decade that it will *not* apply "a 'mandatory R' rating on all films that contain any smoking." (Compl. Ex. 5 at 6.)

[1] Because Exhibit 5 to the Complaint contains several documents combined into one, the pages referenced for Exhibit 5 are the ECF page numbers. The pages referenced for the remaining exhibits to the Complaint are the original page numbers of the underlying documents.

In addition, CARA has disavowed what Plaintiff claims CARA assumed a duty to do. CARA has expressly said what it would do—"consider[] smoking as a factor alongside other factors"—and what it would not do—apply "a 'mandatory R'" to any movie with any tobacco use. (*Id*. at 3, 6.) Plaintiff's assertion of a duty—which underlies most of his claims—therefore fails. And, Plaintiff does not and cannot allege justifiable reliance on the purported representations (which CARA did not make) that any movie rated lower than R would contain no tobacco imagery. Plaintiff alleges that he purchased tickets for his children to see *ten* PG-13 rated movies over the course of four years that contained tobacco imagery, including two movies in the *Hobbit* trilogy. (Compl. ¶ 107.) Clearly, Plaintiff was not relying on the PG-13 rating as representing the absence of tobacco imagery after even one movie, much less ten.

Tobacco use by minors is a significant public health issue. But this does not support compelling CARA to express Plaintiff's opinions when it rates movies or holding CARA liable for statements that it never made or duties it never assumed. Plaintiff has not identified tortious conduct that caused a cognizable injury to himself or anyone else. Instead, he is trying to use the tort system to require CARA to implement his policy goals. If Plaintiff's claims were permitted to proceed, there would be no end to claims invoking CARA's purported duty to disregard its own opinions and instead to implement a given advocacy group's preferred social policy in assigning ratings.

The Complaint cannot proceed past the pleading stage. It is subject to California's anti-SLAPP statute because Plaintiff's state-law claims target speech—movie ratings—and the Complaint expressly alleges ratings to be matters of vigorous public debate.[2] To proceed past the pleading stage, Plaintiff therefore must demonstrate a probability of success on the merits. But Plaintiff cannot even plausibly allege his claims, let alone demonstrate that they are likely to succeed. Accordingly, all of Plaintiff's claims must be stricken under the anti-SLAPP statute. If

---

[2] Defendants in federal court can move to strike and seek fees and costs under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir 2005).

the Court finds that the anti-SLAPP statute does not apply, the Complaint nevertheless must be dismissed for failure to state a claim under Rule 12(b)(6).

## BACKGROUND

### I. The CARA Ratings System

#### A. CARA's Rating Board and Guidelines

CARA's Rating Board issues ratings for motion pictures exhibited and distributed in the United States. The Rating Board rates movies produced by major studios and independent filmmakers alike. (Compl. Ex. 1 at 1.)[3] CARA's ratings are assigned by a team of raters, themselves parents. (*Id.* at 2.) For each movie it rates, the CARA Rating Board assigns the rating that it "believes would best reflect the opinion of most American parents about the suitability of that motion picture for viewing by their children." (*Id.* at 6.) CARA's Guidelines are clear: "It is not CARA's purpose to prescribe socially-appropriate values or to suggest any evolution of the values held by American parents, but instead to reflect the current values of the majority of American parents[.]" (*Id.* at 1.)

CARA's Rating Board assigns a rating of "G," "PG," "PG-13," "R," or "NC-17" for each motion picture it rates. (*See* Compl. Ex. 1 at 4-5.) A rating of "G – General Audiences" reflects CARA's opinion that the movie "contains nothing in theme, language, nudity, sex, violence, or other matters that, in the view of the Rating Board, would offend parents whose younger children view the motion picture." (*Id.* at 7.) A G rating, however, "is not a 'certificate of approval,' nor does it signify a 'children's motion picture.'" (*Id.*) A "PG – Parental Guidance Suggested" rating reflects the Rating Board's opinion that "parents may consider some material unsuitable for their children, and parents should make that decision." (*Id.*) The Guidelines explain that "[t]he more mature themes in some PG-rated motion pictures may call for parental guidance," and "[t]here may be some profanity and some depictions of violence or brief nudity." (*Id.*)

A rating of "PG-13 – Parents Strongly Cautioned," in turn, "is a sterner warning by the Rating Board to parents to determine whether their children under age 13 should view the motion

[3] The Complaint attaches, references and therefore incorporates by reference in their entirety Complaint Exhibits 1-5. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

picture, as some material might not be suited for them" (*Id.*) In CARA's opinion, a PG-13 movie "may go beyond the PG rating in theme, violence, nudity, sensuality, language, adult activities, or other elements, but does not reach the restricted R category." (*Id.*)

An "R – Restricted" rating reflects the Rating Board's opinion that a movie "contains some adult material" and "may include adult themes, adult activity, hard language, intense or persistent violence, sexually-oriented nudity, drug abuse or other elements, so parents are counseled to take this rating very seriously." (*Id.* at 8.) Adolescents and children under the age of 17 are not permitted to attend R-rated movies unaccompanied by a parent or adult guardian. (*Id.*)[4]

Every rating is accompanied by a textual description of the movie's content, called a "rating descriptor." The rating descriptor provides an additional description for parents of "the type of content that resulted in the motion picture being assigned" a particular rating (for example, sexual content), and also describes the intensity of these elements. (*Id.* at 5.)

**B. CARA's Response to Public Health Concerns Relating to Tobacco Imagery in Motion Pictures**

CARA's Guidelines do not discuss tobacco imagery. Since 2007, CARA has made it clear through public statements that the Rating Board considers tobacco imagery as a factor in assigning ratings. (Compl. Ex. 5 at 5-6.) The Rating Board considers whether any smoking imagery is "pervasive," whether the movie "glamorizes smoking," and whether there is "an historic or other mitigating context" for the smoking. (*Id.* at 6.) Where the movie's rating is affected by the depiction of smoking, the rating descriptor explains the role of smoking in the assigned rating, through phrases such as "glamorized smoking" or "pervasive smoking." (*Id.*)

CARA has specifically and publicly rejected a proposal that it impose a "mandatory R" rating for all motion pictures with any smoking: "Some have called for a 'mandatory R' rating on all films that contain any smoking. *We do not believe such a step would further the specific goal of providing information to parents on this issue*." (*Id.* (emphasis added).)

---

[4] NC-17 ratings, which are not at issue in this case, reflect the opinion of the CARA Rating Board that "most parents would consider [the movie] patently too adult for their children 17 and under." (Compl. Ex. 1 at 8.)

**II. Parents Who Want Detailed Information Regarding Tobacco Imagery in Movies Have Publicly Available Resources that Provide Such Information**

CARA is not the only publicly available resource that provides information that parents may find useful in deciding whether and under what circumstances their children may see movies. There are a variety of public websites that provide such information, including several that expressly provide information about tobacco use in movies.

Common Sense Media, for example, provides movie ratings that take into account various criteria—including smoking, alcohol, drug use, bad language, consumerism, violence and sex—that that organization believes it important to communicate to parents using its website. *See* https://www.commonsensemedia.org/; (Defendants' Request for Judicial Notice in Support of Anti-SLAPP and Rule 12(b)(6) Motions ("RJN") Ex. 1 (exemplar screenshot of movie rating discussing smoking content)). UCSF has a website called "Smoke Free Movies" that provides information about (1) the extent of smoking in top box office movies and (2) the effects of smoking in media. (RJN Ex. 2) (http://smokefreemovies.ucsf.edu/). "Scenesmoking," another website, allows users to search a comprehensive online database that rates movies based on the amount of tobacco imagery in the movies. (RJN Ex. 3) (http://www.scenesmoking.org/).

**III. The Complaint**

The Complaint alleges that, since 2003, state attorneys general and public health academics have asked CARA to impose a mandatory rule that motion pictures containing even a single image of smoking be given an R rating. (Compl. ¶¶ 2-3, 61-69 & Exs. 2-4.) The Complaint acknowledges, however, that CARA has declined to change the ratings system to apply a mandatory R to any movie with any image of tobacco use. (*Id*. Ex. 5.)

The Complaint alleges that CARA has a duty to give an R rating to any movie that includes any tobacco imagery. Based on this alleged duty, the Complaint asserts that Defendants as a group are all liable for negligence, breach of fiduciary duty, fraudulent misrepresentation, unfair competition, false advertising, negligent misrepresentation, and private and public nuisance because CARA does not automatically assign an R rating to all movies showing any tobacco use.

(*Id*. ¶¶ 125-64.)[5] The Complaint seeks as relief an injunction that (1) mandates an R rating for any movie with a single image of someone smoking, unless the person smoking is a real historical character or the movie unambiguously depicts the dangers of tobacco use, and (2) requires antismoking advertisements before any movie with a single smoking image. (*Id*. ¶ 6; Prayer for Relief ¶¶ 1-3, 6.)

The Complaint also seeks damages for nationwide and statewide classes of parents in the amount paid for tickets to movies with below-R ratings that had smoking imagery from 2012 onwards; disgorgement of unjust enrichment; punitive damages; and restitution in an amount in excess of $5 million. (Prayer for Relief ¶ 7(a)-(c), (e).) It seeks further relief in connection with the following attenuated theory of causation: that CARA's failure to assign R ratings to all movies with tobacco imagery has caused children to suffer an increased risk of nicotine addiction, which Plaintiff alleges will cause more than 1 million unidentified minors across the world to one day become addicted to nicotine. (Prayer for Relief ¶ 7(d).)

## ARGUMENT

### I. The Complaint Should Be Stricken Under California's Anti-SLAPP Statute

The anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 *et seq.*, provides a procedural remedy "designed to allow for early dismissal of non-meritorious cases aimed at chilling First Amendment expression through costly, time-consuming litigation." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1098 (C.D. Cal. 2004); *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 315-16 (2008). The statute reflects the California Legislature's considered judgment that "it is in the public interest to encourage continued participation in matters of public

---

[5] Plaintiff has improperly attempted to name the Studio Defendants—the MPAA's members—based on conclusory allegations that they "exercise complete control over the entire rating system." (Compl. ¶ 104.) These allegations do not make out a claim that the members themselves are CARA or that they function as its alter ego. On the contrary, the CARA Guidelines make it clear that the MPAA's members "are not involved in the Rating Board's determination of the ratings assigned to individual motion pictures" and that "the Rating Board is self-supporting" based on fees it receives from all producers and distributors (not just the Studio Defendants) who use CARA's rating process. (*Id*. Ex. 1 at 1.) The Studio Defendants reserve their rights to seek dismissal under Fed. R. Civ. P. 12(c) or 56 if the Complaint proceeds past these motions. Additionally, The Walt Disney Company was incorrectly identified as an MPAA member. The member company is an indirect subsidiary of The Walt Disney Company.

significance, and that this participation should not be chilled through the abuse of judicial process." Cal. Civ. Proc. Code § 425.16(a). The anti-SLAPP statute applies to state law claims in federal court and is construed broadly. *Greater Los Angeles Agency on Deafness, Inc. ("GLAAD") v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014).

Courts apply a straightforward two-step inquiry to determine whether a Plaintiff's claims must be stricken under the anti-SLAPP statute. *First*, a court determines whether the movant has made a *prima facie* showing that the anti-SLAPP statute applies because "the lawsuit arises from defendant's act in furtherance of its right of petition or free speech." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013). *Second*, if a defendant makes that threshold showing, "the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of each of plaintiff's claims." *Id.* "[I]f the plaintiff cannot show a probability of prevailing on a claim, the claim is stricken." *Id*. Where, as here, the pleadings on their face support striking the complaint under the anti-SLAPP statute, federal courts may dismiss Plaintiff's claims "in the same manner as a motion under Rule 12." *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 983-84 (C.D. Cal. 1999). Both prongs of the anti-SLAPP statute are met on the face of this Complaint.

### A. Plaintiff's Claims Arise from Acts in Furtherance of the Right to Free Speech in Connection with a Public Issue

On the first step, courts focus on the "allegedly wrongful and injury-producing conduct, not the damage that flows from such conduct." *Renewable Res. Coal., Inc. v. Pebble Mines Corp.*, 218 Cal. App. 4th 384, 387 (2013). "California courts have interpreted this piece of the defendant's threshold showing rather loosely, and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary[.]" *GLADD*, 742 F.3d at 422 (internal quotations marks omitted). Defendants make the necessary *prima facie* showing under two subsections of the anti-SLAPP statute.

*First*, formulating and applying movie ratings—the conduct targeted by the Complaint—is "conduct in furtherance of" protected speech on a matter of public concern under Cal. Civ. Proc.

Code § 425.16(e)(4).[6] "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011). The Complaint itself makes clear that CARA's administration of the ratings system is conduct in furtherance of speech: "defendants have operated, advertised and held out to the film-going public that MPAA's rating system fulfilled a special and vital function, that is, to: a) advise and warn parents regarding film content that the average parent in the United States would find inappropriate and unsuitable for their children unaccompanied by a parent or guardian, and b) protect children under the age of seventeen by prohibiting them from entering theaters and viewing films featuring conduct, imagery and language that defendants determine" unsuitable for unaccompanied children under age seventeen. (Compl. ¶ 55.) The Complaint further alleges that the purpose of the ratings "is to foresee and warn parents and children of content that is not appropriate or suitable for children under the age of seventeen in the films it rates." (*Id.* ¶¶ 67-68.) And the Complaint alleges that CARA uses its ratings to communicate a "seal of approval and certification" that, in CARA's opinion, the movies are appropriate for the specified age group. (*See id.* ¶¶ 4, 38, 41, 55-56, 69, 95, 102-04, 108.)

This indisputably is speech on a "matter of public concern." The public concern standard is construed broadly and "any issue in which the public is interested" will suffice. *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042-43 (2008). The Complaint repeatedly asserts that movie ratings, and specifically the ratings given to movies with tobacco imagery, are a topic of heightened public interest that have drawn public comment from "public health and professional organizations," state attorneys general, and a host of other organizations. (*See* Compl. ¶¶ 2-3, 61-66 & Exs. 2-4.) Plaintiff expressly alleges that the number of parents affected by the ratings is in the millions (*Id.* ¶¶ 52, 93); the large number of potentially interested listeners further establishes that ratings are speech on a matter of public concern. *See, e.g.*, *DuPont Merck Pharm. Co. v.*

---

[6] Although Defendants dispute the fundamental premises of the Complaint regarding what CARA is alleged to have said and what duties it has agreed to undertake, the Court is to consider the Complaint's allegations in determining whether Defendants have satisfied the first prong. *City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 371-72 (2013).

*Super. Ct.*, 78 Cal. App. 4th 562, 567 (2000) (speech about a drug was speech on a matter of public in part because so many people (1.8 million) used the drug).

*CalPERS v. Moody's Investor Service, Inc.*, 226 Cal. App. 4th 643 (2014), is instructive. The court there held that Moody's credit ratings regarding certain investments constituted protected activity under the anti-SLAPP statute where Moody's ratings "concerned an ongoing discussion regarding the financial well-being of a significant investment opportunity" that was of interest to a "definable portion of the public," specifically, the subgroup of investors interested in those particular investments. *Id.* at 659-60. Even more clearly, here, ratings concern matters of public discussion (the content and age-appropriateness of movies) and are of interest to the movie-going public. *See, e.g., Time Warner Entm't Co., L.P. v. F.C.C.*, 93 F.3d 957, 982 (D.C. Cir. 1996) ("[The MPAA's] ratings supply useful and important information to parents, and to their children, about what to expect [in a movie].").

Indeed, movie ratings have a greater claim to being "conduct in furtherance" of protected speech than credit ratings because the subject matter of movie ratings—movies—is *itself* protected speech on a matter of public concern. *See Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 865 (1979); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952); *see also Gangland Prods.*, 730 F.3d at 956 (California courts look to the "broad topic of [a] defendant's conduct" to assess link between speech and public interest). Movie ratings, in sum, fit squarely within the range of practices that courts have found protected as "in furtherance" of the creation of television or movie content. *See, e.g., GLADD*, 742 F.3d at 420-21 (decisions regarding whether to caption online videos was "in furtherance of" creating online news); *Tamkin*, 193 Cal. App. 4th at 143 (use of plaintiffs' names as placeholders in television show script was "in furtherance" of creating television show).

*Second*, ratings are public statements in connection with an issue of public interest under Cal Civ. Proc. Code § 425.16(e)(3). As discussed, ratings and ratings descriptors are indisputably speech on a matter of public concern—the content and age appropriateness of movies. Ratings are widely disseminated in public fora, including in all manner of media advertising and during public screenings of movies. (*See, e.g.,* Compl. Ex. 1 at 11-12 ("Rated motion pictures must bear

prominently on every copy exhibited or distributed in the United States … the symbol of the rating assigned to the motion picture.”).) Indeed, Plaintiff’s theory that CARA’s ratings system supposedly injures parents by causing millions of parents to allow their children to see movies that they should not see (or should not see unaccompanied by parents or guardians) is premised on widespread public dissemination of ratings. (*See* Compl. ¶¶ 52, 93.)

**B. Plaintiff Cannot Demonstrate a Probability of Prevailing on Any Claims**

Plaintiff cannot meet his burden of “demonstrate[ing] a probability of prevailing on the merits.” *Gangland Prods., Inc.*, 730 F.3d at 953. Following from the prong one discussion above, the First Amendment bars Plaintiff’s claims, all of which restrict and impose liability for CARA’s expression of opinions. The Court also can strike the Complaint without reaching the constitutional issues, because the claims independently fail under state law.

**1. The First Amendment Bars Plaintiff’s Claims, All of Which Seek to Impose Liability Based on CARA’s Protected Opinions**

CARA’s ratings of movies are expressed opinions about what CARA believes most American parents want to consider in making decisions about whether and under what circumstances their children can see movies. The gravamen of all of Plaintiff’s claims is that CARA should express a different opinion about any movie with any tobacco image, namely, that it is per se inappropriate for anyone under 17 to see such a movie without a parent or guardian. The First Amendment does not allow Plaintiff to use a civil action to achieve that result.[7]

“[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.” *Milkovich*, 497 U.S. at 20. It is undisputed that CARA’s ratings are matters of public concern. It is for the Court in the first instance to decide whether CARA’s challenged expression is opinion rather than an assertion of fact. *Rodriquez v. Panayiotou*, 314 F.3d 979, 985-86 (9th Cir. 2002). The Ninth Circuit

---

[7] “First Amendment limitations are applicable to all claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement” on a matter of public concern. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1045-46 (1986). *See, e.g.*, *In re Cty. of Orange*, 245 B.R. 138, 144, 150-51 (C.D. Cal. 1997) (negligence claims targeting such statements must show that speaker acted with “actual malice”); *CalPERS*, 226 Cal. App. 4th at 675-77 (discussing ratings cases applying actual malice standard).

considers three factors to distinguish opinions from factual assertions, and under all three CARA's expression is constitutionally protected opinion. *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).[8]

*First*, "the general tenor" of CARA's movie ratings "negate the impression" of CARA "asserting an objective fact." *Id*. Plaintiff himself alleges that "CARA assigns the rating the Rating Board *believes* would best reflect the opinion of most American parents about the suitability of that motion picture for viewing by their children"; and CARA's raters' "job is to rate each film as *they believe* a majority of American parents would rate it"—inherently imparting a tenor of opinion. (Compl. ¶¶ 59, 99 (emphases added).) CARA's Guidelines and its public statements (which the Complaint expressly incorporates) confirm that these are matters of opinion. The Guidelines state that "[i]t is not CARA's purpose to prescribe socially-appropriate values or suggest any evolution of the values of held by American parents, but instead to reflect the current values of the majority of American parents." (*Id*. Ex. 1 at 1.) The Guidelines further make clear that "CARA assigns the rating the Rating Board believes would best reflect the opinion of most American parents about the suitability of that motion picture for viewing by their children." (*Id*. at 6.) And, with respect to Plaintiff's specific challenge to CARA declining to apply a mandatory R rating to any film with any tobacco imagery, CARA has made clear that it will not impose such a rule because it does "not *believe* such a step would further the specific goal of providing information to parents on this issue." (*Id*. Ex. 5 at 6 (emphasis added).)

Ratings based on the "beliefs" and "opinions" of the raters, such as the Rating Board, are quintessential protected opinions, as are CARA's opinions underlying its formulation of rating policy. *E.g.*, *ZL Techs.*, *Inc. v. Gartner*, *Inc.*, 709 F. Supp. 2d 789, 796-801 (N.D. Cal. 2010) (ranking of software producer not actionable where it "unambiguously present[ed]" "subjective 'views' or 'opinions'" based on conversations and surveys), *aff'd*, 433 F. App'x 547 (9th Cir. 2011); *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1252 (W.D. Wash. 2007) (rating system

[8] The *Partington* test considers: "(1) [W]hether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." 56 F.3d at 1153.

expressed opinions where it was "described as an 'assessment' or 'judgment'"). Accordingly, the first *Partington* factor demonstrates that the Complaint is aimed at opinions.

*Second*, the Ninth Circuit looks to whether the expression uses "figurative or hyperbolic language." *Partington*, 56 F.3d at 1153. Although CARA does not use hyperbole, its letter ratings, followed by brief descriptors, are paradigmatic examples of evaluative descriptions. These are expressions of judgment and opinion. Like the ratings in *Browne*, a rating of PG or PG-13 "is figurative: it represents in an abstracted form some panoply of attributes and the values [that CARA] has assigned them." *Browne*, 525 F. Supp. 2d at 1252. And just like a user of the attorney-rating website in *Browne* "would understand that '5.5' is not a statement of fact," a parent would understand that "PG-13," for example, is not an assertion of fact. *Id*.

*Third*, the Ninth Circuit considers whether the challenged expression is provably false. *Partington*, 56 F.3d at 1153. CARA's and the Rating Board's beliefs as to what "would best reflect the opinion of most American parents" (Compl. ¶ 59) are not provably false. Courts have repeatedly held that analogous subjective ratings are not "objectively verifiable fact[s]." *Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 870 (8th Cir. 2005) (rating of air charters "on a scale of 1 [to] 10" based on safety and other data was "ultimately a subjective assessment, not an objectively verifiable fact"); *see also Browne*, 525 F. Supp. 2d at 1252-53 & n.1 ("Ratings and reviews are, by their very nature, subjective and debatable."); *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 243 (Mo. Ct. App. 2011) ("[The] BBB's 'C' rating of Castle Rock is not sufficiently factual to be susceptible of being proved true or false," and "[a]lthough one may disagree with BBB's evaluation of the underlying objective facts, the rating itself cannot be proved true or false.").

In sum, the Complaint seeks to impose liability based on CARA's expressions of opinion on matters of public concern. The First Amendment bars this effort.[9]

---

[9] Plaintiff's claims also raise serious First Amendment concerns because, if accepted, they would greatly limit access to categories of speech content for minors—including, for example, period movies that show fictional persons smoking in eras when smoking was prevalent, or the depiction of fictionalized characters historically usually associated with tobacco use (*e.g.*, Bilbo Baggins or Sherlock Holmes). As the Supreme Court stated in striking down California's video game

(footnote continued on next page)

**2. Plaintiff's Common Law and Statutory Claims All Fail as a Matter of Law**

Plaintiff's tort claims all share a common set of shortcomings under California law. For ease of presentation, then, the negligent misrepresentation claim is discussed first because the many defects in this claim apply to Plaintiff's other claims.

**(a) Plaintiff's Negligent Misrepresentation Claim (Count VII) Fails**

To prevail on his negligent misrepresentation claim, Plaintiff must establish: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Fevinger v. Bank of Am., N.A.*, 2014 WL 1338301, at *4 (N.D. Cal. Mar. 31, 2014) (citation omitted). Additionally, "plaintiff must also show that the defendant owed the injured party a duty of care." *Id.* (citation omitted). The Complaint fails to meet these state law requirements.

**No Actionable Statement of Fact.** "An essential element" of a negligent misrepresentation claim "is that the defendant must have made a misrepresentation as to a past or existing material fact." *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002). Opinions typically are not treated as factual representations. *Id.* As demonstrated, Plaintiff's negligent misrepresentation claim—indeed, all his claims—are based on CARA's expressions of opinion. Hence, that is a failure under state law as well as the First Amendment.

**No Misrepresentation of Fact.** Plaintiff also fails to plead a misrepresentation of fact. CARA has done precisely what it said it would do with films with smoking imagery, and Plaintiff can point to nothing false about CARA's public statements. Plaintiff alleges that, because CARA

(footnote continued from previous page)
labeling law, "[m]inors are entitled to a significant measure of First Amendment protection," and courts should be reluctant to limit minors' access to a category of speech, particularly where there is no "longstanding tradition" of such limitation. *Brown v. Entm't Merc. Ass'n*, 564 U.S. 786, 794-96 (2011). But Plaintiff's liability rule would make an R rating mandatory wherever a movie included any tobacco use, restricting minors' access across the board to a wide range of motion picture content.

does not give all movies with smoking imagery an R rating, CARA falsely "certif[ies] and rat[es] films with tobacco imagery as suitable and appropriate for children under the age of seventeen unaccompanied by a parent or guardian." (Compl. ¶ 160.) But CARA does not say that it is providing blanket certifications of age-appropriateness: its ratings are CARA's belief as to what reflects "the opinion of most American parents about the suitability of that motion picture for viewing by their children," not CARA's attempt to prescribe "socially-appropriate values." (*Id.* Ex. 1 at 6.) And CARA has never said that it will give an R rating to every movie containing a single image of smoking. In fact, the opposite is true. CARA has made clear it is *not* adopting a "'mandatory R' rating on all films that contain any smoking." (*Id.* Ex. 5 at 6.) Thus, the Complaint does not plead and Plaintiff cannot establish any misrepresentation.[10]

Plaintiff's contention that a rating below R *implies* that a movie will not contain tobacco images likewise fails. (Compl. ¶ 109.) A negligent misrepresentation claim under California law cannot merely rest on implied representations or nondisclosures. *Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL 4209399, at *11 (N.D. Cal. Nov. 26, 2007); *Yanase v. Auto. Club of So. Cal.*, 212 Cal. App. 3d 468, 472-73 (1989).[11]

**No Legal Duty.** "[T]he existence of a legal duty in a given factual situation is a question of law for the courts to determine." *Jackson v. AEG Live, LLC*, 233 Cal. App. 4th 1156, 1173 (2015) (citation omitted). Plaintiff contends that Defendants have both a voluntarily assumed duty, as well as a duty under standard negligence principles, to give movies containing any

---

[10] The First Amendment also adds an element to Plaintiff's tort claims that Plaintiff further fails to meet. Because CARA's ratings concededly (and indisputably) constitute speech on matters of public concern, Plaintiff must establish that CARA acted with "actual malice," i.e., with "knowledge that the statement was false or with reckless disregard for whether or not it was true." *In re Cty. of Orange*, 245 B.R. at 144. Plaintiff cannot establish or plausibly allege that Defendants made false statements of fact. *A fortiori*, he cannot establish that Defendants made false statements with actual malice.

[11] In any event, CARA's public statements that it does not adopt or apply a "mandatory R" rule defeats any such implication. So, too, do the contents of the ratings themselves. For example, the definition of a PG-13 rating—the rating that allegedly applies to the vast majority of non-R-rated movies with tobacco images that Plaintiff cites—says nothing about the existence of tobacco imagery; the rating instead "strongly cautions" parents to consider whether their children should see the movie. (Compl. ¶ 60 & Ex. 1 at 7-8.)

tobacco imagery an R rating. (*E.g.*, Compl. ¶¶ 68-69, 72-78, 84, 126, 130-31, 156.) These contentions fail as a matter of law for multiple reasons.

*First*, a party does not have a duty to act where it has expressly disclaimed the specific duty that the plaintiff seeks to impose. *See Young v. Facebook, Inc.*, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010) (Facebook had no "duty to use due care when hiring and training personnel to monitor and enforce website activity" where it "expressly disclaim[ed] any duty to provide for the safety of [its] users"). Here, CARA has expressly disclaimed the specific duty that Plaintiff alleges. CARA has made clear that movies with tobacco imagery may, in fact, be rated below R, and that it will not impose "a 'mandatory R' rating on all films that contain any smoking." (Compl. Ex. 5 at 6.) Indeed, CARA has publicly said that a rule requiring that all movies with smoking images garner an R rating is an "extreme" position that it thinks would not clearly communicate the content of movies to parents. (*Id.* at 6.) CARA's disclaimer also defeats the contention that CARA voluntarily assumed a duty. In order for a party voluntarily to assume a duty, the party "must *specifically* have undertaken to perform the task that [it] is charged with having performed negligently." *Jackson*, 233 Cal. App. 4th at 1175-76 (citation omitted). CARA, in contrast, has expressly disclaimed that duty.

*Second*, CARA has expressly disclaimed that its movie ratings are intended "to prescribe socially-appropriate values or to suggest any evolution of values," and has made clear that the ratings instead "reflect the current values of the majority of American parents." (Compl. ¶ 58 & Ex. 1 at 1.) Plaintiff asserts CARA should be obligated to apply the mandatory R rating rule, even if CARA does not believe the majority of Americans favor such a rule. (Compl. ¶¶ 72-84.) Plaintiff, however, cannot rewrite CARA's stated mission to create a duty to rate R all movies with tobacco imagery simply because he wants the ratings system to perform a different function, one that CARA makes no claim to serve. *See Jackson*, 233 Cal. App. 4th at 1175-77. Plaintiff's allegation that CARA's rule restricting youth under the age of 17 from seeing R-rated movies without a parent or guardian creates a duty to restrict unaccompanied youth from seeing smoking imagery (*see* Compl. ¶¶ 73-74) has the same defect: namely, the fact that CARA undertakes to rate movies R when it believes that most American parents would not want their children to see

the movie unaccompanied does not obligate CARA to restrict youth from seeing tobacco images on the grounds that it would be good public policy.

*Third*, Plaintiff's theory that CARA's ratings must influence public values and opinions—rather than reflect what CARA believes those existing values and opinions to be—has no logical stopping point. The rule would require CARA to give an R rating to movies that depict any conduct that advocacy groups think unhealthy—for example, movies that depict alcohol use, gambling, contact sports, bullying, consumption of soda or fatty foods, or high-speed driving. Plaintiff and other parents who want to know about the existence of tobacco use or a wide range of other potentially objectionable content in movies have many resources at their disposal that provide that information. RJN Exs. 1–3. That is not CARA's ratings system. CARA's system reflects the belief that the "decision concerning the appropriateness of a movie's content is ultimately a parental one"; the ratings do not "make a final judgment" on the "possible suitability or unsuitability of viewing by children" because "[t]he parent's decision remains the key to children's attendance." *Desilets on Behalf of Desilets v. Clearview Reg'l Bd. of Educ*., 266 N.J. Super. 531, 542-43 (App. Div. 1993) (citation omitted), *aff'd*, 137 N.J. 585 (1994). The law does not require CARA to adopt a different system—or to allow any advocacy group to define the contours of CARA's system according to the group's particular social policy goals.

*Fourth*, the imposition of a duty to assign an R rating to all movies that contain tobacco imagery based on CARA's mere dissemination of purportedly inaccurate ratings is not only unfounded, but also raises serious First Amendment concerns. The Ninth Circuit has recognized that "the cases uniformly refuse to impose" a duty upon a "publisher's role in bringing ideas and information to the public." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037 & nn.8-9 (9th Cir. 1991) (collecting cases). While CARA is not only the publisher but also the author of its movie ratings, the logic of *Winter*, the precedent on which it relies, and subsequent decisions all foreclose imposing a negligence-based duty in these circumstances. *See id*.; *First Equity Corp. v. Standard & Poor's Corp.*, 670 F. Supp. 115, 117 (S.D.N.Y. 1987) (imposing negligence-based duty raises "the specter of unlimited liability"), *aff'd*, 869 F.2d 175 (2nd Cir. 1989); *Rosenberg v. Harwood*, [2012] 39 Media L. Rep. (BNA) 1965, 1970-71 & n.13, 2011 WL 3153314 (Utah Dist. Ct. 2011)

("[M]any of the same policy considerations present in imposing liability on publishers would also be present if liability were imposed on authors."); *Bailey v. Huggins Diagnostic & Rehab. Ctr., Inc.*, 952 P.2d 768, 773 (Colo. App. 1997) ("[I]n light of First Amendment implications, it has been concluded that no duty of due care is owed by an author to a reader.").

**No Justifiable Reliance.** A plaintiff fails to plead or prove justifiable reliance as a matter of law "if the facts permit reasonable minds to come to just one conclusion." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). Plaintiff cannot show that he is likely to establish justifiable reliance. Indeed, he has not alleged and cannot even plausibly allege it. As discussed, nothing that CARA has said "expressly or impliedly suggest[s]" that movies rated PG-13 or lower will contain no tobacco imagery. *Olson v. Children's Home Soc'y of Cal.*, 204 Cal. App. 3d 1362, 1367 (1988). Again, CARA has made clear that it does not automatically assign R ratings to movies depicting tobacco imagery and the content of the ratings and ratings descriptors do not suggest otherwise. As such, there is no factual basis on which to plead reliance.

The Complaint, moreover, defeats Plaintiff's claim of justifiable reliance. Plaintiff alleges repeatedly that "[t]obacco imagery in youth-rated films is pervasive." (Compl. ¶ 35-44.) Given these allegations, Plaintiff cannot establish that he relies on what he calls "youth ratings" to indicate that there will be no tobacco image in a movie with such a rating. On the contrary, Plaintiff expressly alleges that he purchased tickets for his children to see *ten* PG-13 movies over *four* years, and that each of these movies contained tobacco imagery. Plaintiff cannot establish that he understood a PG-13 rating to mean a movie would contain no tobacco imagery when he repeatedly saw PG-13 movies that *did* contain tobacco imagery. (*Id.* ¶ 107.)[12] Courts routinely reject allegations of reliance where a plaintiff has continued to purchase or use the allegedly misrepresented products. *See, e.g.*, *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 787 (2015); *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 643 (C.D. Cal. 2014). Plaintiff is not permitted to "close[] his eyes" to "'put faith' in a purported representation that" movies rated PG-13 or lower

[12] For example, Plaintiff cannot plausibly allege—let alone probably establish—that he did not expect *The Hobbit: The Desolation of Smaug* to show Tolkien characters smoking pipes when, just a year earlier, he saw *The Hobbit: An Unexpected Journey*, which depicted these same fantasy story characters smoking pipes. (Compl. ¶ 107(f), (h).)

would not contain any tobacco imagery, particularly given Defendants' public statements and the content of the movies that he has already seen. *Davis*, 691 F.3d at 1163-64 (citation omitted).

**No Proximate Causation.** "[W]here causation cannot reasonably be established under the facts alleged by a plaintiff, the question of proximate cause is one for the court." *Benefiel v. Exxon Corp*., 959 F.2d 805, 808 (9th Cir. 1992). Plaintiff's theory of causation fails. Plaintiff has not plausibly alleged that CARA's failure to assign R ratings to all movies with tobacco imagery proximately caused putative class members' children to suffer an increased risk of nicotine addition, tobacco-related disease, and premature death. (Compl. ¶ 128.) The causal chain—that rating a movie PG-13 or lower instead of R leads to increased youth viewership of smoking imagery, which leads to increased youth smoking, which leads to nicotine addiction and its myriad effects—is too attenuated and speculative to support damages. This attenuated chain ignores the fact that cigarettes exist in the world; that tens of millions of Americans and more than one billion people around the world smoke; and that there are many causes and reasons for people to take up smoking. Merely seeing the movies "did not directly cause any injury to" Plaintiff's children. *Benefiel*, 959 F.2d at 807. And Plaintiff cannot show proximate causation by alleging that the movies may have conceivably "triggered a series of intervening events" that allegedly resulted in harm. *Id.* at 807-08 (Exxon-Valdez oil spill did not proximately cause increased gas prices given at least one intervening cause).

**No Cognizable Damages for Heightened Risk.** "Under California law, the breach of a duty causing only speculative harm or the threat of future harm does not normally suffice to create a cause of action for negligence." *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009) (citations omitted), *aff'd*, 380 F. App'x 689 (9th Cir. 2010). "[T]he mere possibility or even probability that damage will result from wrongful conduct does not render it actionable." *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1509 (2008) (citation omitted). Under this well-settled law, Plaintiff's claims of damages for an alleged risk of Plaintiff's children to nicotine addiction fail as a matter of law. *Khan v. Shiley, Inc*., 217 Cal. App. 3d 848, 857 (1990). In *Khan*, for example, the court rejected claims that the implantation of an allegedly defective heart valve exposed the plaintiff "to the constant threat of imminent death or other serious physical injury and

the anxiety, fear and emotional distress that results therefrom." *Id*. at 852 (internal quotation marks omitted). *Khan* explained that negligence could not be "premised on the *risk* the valve *may* malfunction in the future." *Id*. at 857.

**(b) Plaintiff's Fraudulent Misrepresentation Claim (Count IV) Fails**

To make out a claim of fraudulent misrepresentation, Plaintiff must establish: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988).

Plaintiff's fraudulent misrepresentation claim fails for many of the same reasons as his negligent misrepresentation claim. *First*, CARA's ratings are not actionable statements—they are expressions of opinion—and Plaintiff in any event points to no misrepresentations of fact. (*Supra* at 11-15.) *Second*, to the extent Plaintiff alleges fraudulent misrepresentation by concealment or non-disclosure, he must establish a duty, *see Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014), and CARA has no duty to assign an R rating to every movie containing tobacco imagery. (*Supra* at 15-18.) *Third*, Plaintiff cannot establish justifiable reliance. (*Supra* at 18-19.) *Fourth*, Plaintiff cannot establish proximate causation. (*Supra* at 19.) *Fifth*, Plaintiff cannot establish entitlement to damages. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 202 (2003) (no cause of action for fraud where the existence of damages is "too remote, speculative or uncertain") (citations omitted); (*supra* at 19-20).

Plaintiff's fraudulent misrepresentation claim also fails for the additional reason that he cannot plead scienter. Scienter is established "[w]here a person makes statements which he does not believe to be true" or "in a reckless manner without knowing whether they are true or false." *Yellow Creek Logging Corp. v. Dare*, 216 Cal. App. 2d 50, 57 (1963). As noted above, *supra* at 15 n.10, Plaintiff cannot establish or plausibly allege that CARA made a false statement, much less establish CARA's knowledge that any statement was false. Plaintiff's allegations that CARA solicited health information relating to smoking in movies in 2006 and have known since 2007 of a correlation between tobacco imagery in youth-rated movies and adolescent nicotine addiction

(Compl. ¶¶ 92-93, 96) do not show that CARA knowingly or recklessly misrepresented anything. CARA's ratings are expressions of opinion. The research that Plaintiff cites on the claimed impact of smoking images has no bearing on the accuracy of CARA's opinions regarding most American parents' current values, let alone establish that CARA's opinions were knowingly or recklessly false.

**(c) Plaintiff's Negligence Claims (Counts I and II) Fail**

"Actionable negligence is traditionally regarded as involving the following: (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury." *Jackson*, 233 Cal. App. 4th at 1173 (citation omitted). For reasons already discussed, Plaintiff has not plausibly alleged, and will not be able to establish, that CARA owes parents a general duty to assign an R rating to every movie with images of someone smoking or that CARA has voluntarily assumed a duty to do so. (*Supra* at 15-18.) Plaintiff similarly fails to plead or demonstrate a probability of showing proximate causation of injuries, or damages. (*Supra* at 19-20.)

Further, Plaintiff's negligence allegations rely on CARA's communication of its ratings to the public, and merely duplicate his negligent misrepresentation claim. They are therefore insufficient to support a separate claim for negligence. *Holcomb v. Wells Fargo Bank, N.A.*, 155 Cal. App. 4th 490, 501 (2007).

**(d) Plaintiff's Breach of Fiduciary Duty Claim (Count III) Fails**

To establish a breach of fiduciary duty, Plaintiff must show "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Comm. on Children's Television, Inc.* ("*Children's Television*") *v. General Foods Corp.*, 35 Cal. 3d 197, 221 (1983) (superseded by statute on other grounds).

Plaintiff's fiduciary duty claim fails because CARA has not voluntarily undertaken to "act on behalf of" parents and "giv[e] priority" to their best interests. *Children's Television*, 35 Cal. 3d

at 222. CARA explains that its ratings aim to reflect the "current values" of most American parents, and not to prescribe values or determine what is in the best interests of parents or their children. (Compl. ¶ 58.) Plaintiff's allegation that parents depend on and trust CARA's ratings, because CARA allegedly assures the public that its raters are "specially trained, educated and informed," does not show that CARA has knowingly agreed to serve as the fiduciary of American parents. (*Id.* ¶ 134); *Children's Television*, 35 Cal. 3d at 222 (no fiduciary duty between seller and buyer "even though sellers routinely make representations concerning their product, often on the basis of a claimed expert knowledge about its utility and value"). Likewise, CARA's relationship with parents plainly is not the sort of "technical, legal relationship[]" such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client for which "[f]iduciary duties arise as a matter of law." *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 632-34, 638 (2005). Furthermore, even if there were a fiduciary relationship, as shown *supra* at 14-20, Plaintiff cannot establish that CARA made any misrepresentations or breached any duties that would support a breach of fiduciary duty claim, that CARA's conduct proximately caused Plaintiff's children's alleged injuries, or that Plaintiff can recover damages based on these alleged outcomes.

**(e) Plaintiff's Nuisance Claim (Count VIII) Fails**

To establish a public or private nuisance claim, a plaintiff must prove (1) the existence of a duty; (2) causation; and that the alleged interference with the use or enjoyment of property is both (3) substantial; and (4) unreasonable. *Schaeffer v. Gregory Vill. Partners, L.P.*, 105 F. Supp. 3d 951, 966-67 (N.D. Cal. 2015). "Where negligence and nuisance causes of action rely on the same facts about lack of due care," "[t]he nuisance claim 'stands or falls with the determination of the negligence cause of action.'" *Melton v. Boustred*, 183 Cal. App. 4th 521, 542 (2010) (citations omitted). Plaintiff's nuisance claim fails for that reason. Moreover, the alleged nuisance is smoking and smoking-related health risks: Plaintiff has not alleged, and cannot establish, that CARA "engaged in the 'kinds of affirmative acts or instructions' that would 'support a finding that [it] assisted in creating [this] nuisance.'" *Team Enters., LLC v. W. Inv. Real Estate Trust*, 647

F.3d 901, 912 (9th Cir. 2011) (citation omitted). Further, because Plaintiff cannot establish the existence of a duty of care or causation, *supra* at 15-19, his nuisance claim fails as a matter of law.

**(f) Plaintiff's False Advertising Law Claim (Count VI) Fails**

California's False Advertising Law ("FAL") makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500 *et seq*. To state an FAL claim, Plaintiff must allege that CARA made "representations [that] are likely to deceive a reasonable consumer." *Shaker v. Nature's Path Foods, Inc.*, 2013 WL 6729802, at *3 (C.D. Cal. Dec. 16, 2013). As discussed above, CARA has made no actionable representations relating to smoking imagery in movies, let alone any untrue ones.

Plaintiff's FAL claim fails for other reasons as well. CARA's ratings are "noncommercial speech entitled to full First Amendment protection," and cannot be the subject of an FAL claim. *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 343 (2004). "Commercial speech is 'usually defined as speech that does no more than propose a commercial transaction.'" *Id*. (citation omitted). Plaintiff cannot establish that CARA's ratings are unprotected commercial speech, having extensively alleged that ratings advise parents whether movie content is appropriate for children of certain ages, and so do more than merely propose a transaction. (*Supra* at 8-11); *see Kronemeyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 948-49 (2007) (website listing movie credits was "informational" rather than "directed at sales" not commercial speech); *Bernardo*, 115 Cal. App. 4th at 343-45 (web pages that were "educational in nature and asserted Planned Parenthood's positions on disputed scientific and medical issues of public interest" not commercial speech). The First Amendment also bars Plaintiff's FAL claim because the ratings are opinions, not "readily verifiable *factual* assertions about matters within [Defendants'] own knowledge." *Bernardo*, 115 Cal. App. 4th at 348-49; (*supra* at 11-13).

Plaintiff also fails to plead that CARA's ratings are untrue or "likely to deceive" reasonable parents into thinking that PG-13 or lower-rated movies will never contain depictions of tobacco imagery. *Bernardo*, 115 Cal. App. 4th at 355-56. (citation omitted); *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1264 (N.D. Cal. 2014)("[W]here a court can conclude as a matter of law that

alleged misrepresentations are not likely to deceive a reasonable consumer, courts have dismissed [FAL] claims[.]"); (*supra* at 14-15). Nor can Plaintiff plausibly allege that *he* personally was deceived by CARA's PG-13 ratings, given his allegation that he purchased tickets for his children to see ten PG-13 movies with tobacco imagery over the course of four years. (*Supra* at 18-19.)

**(g) Plaintiff's Unfair Competition Law Claim (Count V) Fails**

Under California's Unfair Competition Law ("UCL"), "[a]ny person who engages, has engaged, or proposes to engage in unfair competition" may be enjoined and a court may order restitution of any money or property "acquired by means of such unfair competition." California's UCL authorizes injunctions and awards of restitution to punish "unfair competition," which it defines as (1) "unlawful," (2) "unfair" or (3) "fraudulent" business acts and practices. Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiff's UCL claim fails because CARA's ratings are protected speech under the First Amendment. *Bernardo*, 115 Cal. App. 4th at 343; (*supra* at 11-13). This claim fails for other reasons as well.

In alleging that CARA's rating system is "unlawful," the first prong of the UCL, Plaintiff relies on inapplicable predicate violations, such as California Penal Code § 272 (contributing to the delinquency of minors); § 308 (prohibiting the sale of tobacco to minors); and Civil Code § 3479 (prohibiting the maintenance of a public nuisance). Plaintiff cannot plausibly allege that the challenged conduct relating to movie ratings satisfies the requirements of statutes protecting minors, and Plaintiff's nuisance claims fail for the reasons already explained, *see supra* at 22-23. Plaintiff also relies on CARA's alleged violation of the FAL—which, as just explained, fails as a matter of law. (*Supra* at 23-24.) Because Plaintiff cannot state claims under any of the cited statutes, they cannot support a UCL claim.

Plaintiff cannot satisfy the second prong of the UCL, either, which requires showing that CARA's ratings threaten an incipient violation of the antitrust laws. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiff has no allegations to this effect.

Nor can Plaintiff satisfy the third prong of the UCL, which is governed by the same legal standards as Plaintiff's FAL claim. *Shaker*, 2013 WL 6729802, at *3; (*supra* at 23).

**II. The Complaint Should Be Dismissed Under Rule 12(b)(6)**

For the same reasons that Plaintiff fails to establish a probability of succeeding on the merits as required under the anti-SLAPP statute, he also fails to plausibly state a claim as to any of his myriad legal claims under Rule 12(b)(6). To the extent the Court holds that this case is not appropriate for dismissal under the anti-SLAPP statute, it should dismiss the Complaint under Rule 12(b)(6).

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be stricken in its entirety under the anti-SLAPP statute or, alternatively, dismissed with prejudice.

DATED: April 29, 2016

MUNGER, TOLLES & OLSON LLP

By: */s/ Kelly M. Klaus*
KELLY M. KLAUS

*Attorneys for MPAA and Studio Defendants*

BRYAN CAVE LLP

By: */s/ K. Lee Marshall*
K. LEE MARSHALL

*Attorneys for NATO*

* * *

In accordance with Civil Local Rule 5-1(i), the filer attests that each of the above signatories have concurred in the filing of this document.

DATED: April 29, 2016

By: */s/ Kelly M. Klaus*
KELLY M. KLAUS