1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT

8          NORTHERN DISTRICT OF CALIFORNIA

9

10  TIMOTHY FORSYTH,                          Case No.  16-cv-00935-RS

            Plaintiff,

11

        v.                                    ORDER GRANTING DEFENDANTS'
12                                            SPECIAL MOTION TO STRIKE AND
                                              MOTION TO DISMISS
    MOTION PICTURE ASSOCIATION OF
13  AMERICA, INC., et al.,

14          Defendants.

15

16                           **I.  INTRODUCTION**

17        The primary relief plaintiff Timothy Forsyth seeks in this putative class action is a legal

18  determination that those responsible for assigning the familiar "G," "PG," "PG-13," and "R"

19  ratings to movies may not assign a rating lower than "R" to any movie depicting tobacco use, with

20  certain narrow exceptions .  Forsyth alleges that studies have found a correlation between

21  children's exposure to tobacco imagery in movies and increased levels of tobacco use and

22  addiction, with a corresponding increase in disease and premature death.  Forsyth alleges some of

23  the studies go beyond merely identifying the correlation and have concluded the evidence

24  establishes a *causal* relationship.  Extrapolating, Forsyth alleges that requiring any movie with

25  tobacco imagery to be rated "R," could prevent a million premature deaths.

26        Defendants move to strike Forsyth's claims pursuant to California's anti-SLAPP statute,

27  and in the alternative move to dismiss the complaint for failure to state a claim.  For the reasons

28  that follow, the motions will be granted.

United States District Court
Northern District of California

## II. BACKGROUND

Forsyth is the father of two children, ages 12 and 13, and has bought them tickets to PG-13-rated movies that featured tobacco imagery.  Defendants are major movie studios, the National Association of Theater Owners ("NATO"), and the Motion Picture Association of America ("MPAA").  Defendants control the Classification and Rating Administration ("CARA"), which was established by NATO and the MPAA, and operated as a division of the MPAA.  CARA is responsible for determining movie ratings.

According to Forsyth, defendants have known since 2003 that tobacco imagery in films is not appropriate for children and adolescents because it can promote tobacco use, which in turn causes disease and death.  Forsyth alleges defendants have failed to respond appropriately to this fact, and have wrongly applied ratings less stringent than "R" to movies containing tobacco imagery.  As a result, "defendants' conduct will cause an additional 200,000 U.S. children under the age of seventeen to become new cigarette smokers every year and will cause an additional 64,000 deaths from tobacco induced diseases in future years."  Compl. ¶ 53.

On behalf of a putative class, Forsyth now brings claims for negligence, negligence in a voluntary undertaking, breach of fiduciary duty, fraudulent misrepresentation, unfair competition, false advertising, negligent misrepresentation, and private and public nuisance.  Forsyth's prayer for relief seeks class certification, over $20 million in damages, and various forms of declaratory and injunctive relief.  Primarily, Forsyth seeks an injunction requiring defendants to assign an "R" rating to all movies depicting tobacco, unless "the presentation of tobacco clearly and unambiguously reflects the dangers and consequences of tobacco use or is necessary to represent the smoking of a real historical figure who actually used tobacco."  Defendants move to strike Forsyth's complaint pursuant to California's anti-SLAPP statute, Cal. Civ. Pro. Code § 425.16, *et seq*.  In the alternative, they move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

### III.  LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "[D]etailed factual allegations are not required," but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint.  Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party.  *Iqbal*, 556 U.S. at 678.  When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

"To evaluate an anti-SLAPP motion, a court engages in a two-part inquiry.  The defendant bears the initial burden to show that the statute applies because the lawsuit arises from defendant's act in furtherance of its right of petition or free speech.  If the defendant meets its burden, the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of each of plaintiff's claims."  *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013) (citations omitted).  The anti-SLAPP statute applies to state-law claims in federal court and is "broadly construed."  *See Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014).  "If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of [Cal. Civ. Pro. Code] § 425.16(c) applies."  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 983 (C.D. Cal.

United States District Court
Northern District of California

1999).

## IV.  DISCUSSION

### A.  Nature of the speech

The first inquiry in deciding an anti-SLAPP motion is whether plaintiff's claims arise "from any act of [the defendants] in furtherance of [their] right of . . . free speech . . . in connection with a public issue.  Cal. Civ. Proc. Code § 425.16(b)(1).  Such acts include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or . . . any other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest."  *Id.* § 425.16(e)(3)-(4).  What constitutes an "issue of public interest" is construed broadly:

> '[A]n issue of public interest' within the meaning of section 425.16, subdivision (e)(3) is *any issue in which the public is interested.*  In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute — it is enough that it is one in which the public takes an interest.

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original).  *See also, e.g.*, *California Pub. Employees' Ret. Sys. v. Moody's Inv'rs Serv., Inc.*, 226 Cal. App. 4th 643, 658-61(2014) (holding that Moody's credit ratings were speech on an issue of public interest under the first prong of the anti-SLAPP inquiry).  Meanwhile, "[a]n act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right."  *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011).

Undoubtedly, movie ratings are made "in connection with an issue of public interest." Movies are produced and released for public consumption, and movie ratings speak generally to the content of movies and their suitability for different audiences.  *See Time Warner Entm't Co., L.P. v. F.C.C.*, 93 F.3d 957, 982 (D.C. Cir. 1996) ([T]here is . . . no doubt that [movie] ratings supply useful and important information to parents, and to their children, about what to expect [in a movie]. ")  Movie ratings are also "in furtherance of free speech," because movies themselves

United States District Court
Northern District of California

United States District Court
Northern District of California

are a form of free speech, and the ratings help advance that free speech by giving potential audiences an indication of a movie's content or suitability.  *See Greater Los Angeles Agency on Deafness*, 742 F.3d at 423 (holding that "CNN's decision to publish and its publication of online news videos without closed captions" was in furtherance of free speech).

The primary thrust of Forsyth's opposition to this motion is his contention that the rating system represents "pure commercial speech," such that there is no "public interest" to trigger the anti-SLAPP statute and no First Amendment issue undermining the viability of the complaint either for purposes of anti-SLAPP or in the Rule 12(b)(6) analysis.[1]  Forsyth argues his claims do not implicate *any* speech defendants may wish to engage in regarding the ratings system, the ratings themselves, or the underlying films.  Rather, Forsyth contends, the only speech his claims are "based on" are the "certification trademarks" of "G," "PG," "PG-13," and "R" that CARA has registered in various forms.

A certification mark is "any word, name, symbol, or device, or any combination thereof— [¶] (1) used by a person other than its owner, or [¶] (2) which its owner has a bona fide intention to permit a person other than the owner to use in commerce and files an application to register on the principal register established by this Chapter, [¶] to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization." 15 U.S.C. § 1127.  Forsyth relies on *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.,* 183 Cal. App. 4th 1186 (2010), in which a plaintiff sought to

---

[1]  Defendants excoriate Forsyth for, in their view, having attempted to "rewrite" his complaint in the opposition rather than defending it as pleaded.  Indeed, the opposition relies heavily on the notion that CARA's ratings are "certification trademarks," formally registered with the Patent and Trademark Office, a point barely mentioned in the complaint.  Defendants do not suggest, however, that registration of the certification trademarks cannot be considered in the motion to dismiss, and do not object to Forsyth's request for judicial notice of the registrations, which is hereby granted.   Furthermore, although the complaint is replete with *legal arguments* that differ from those on which Forsyth now relies, the points which he seems to have abandoned are exactly that—legal arguments, which are not strictly appropriate for inclusion in a complaint in the first instance.  It does not appear that Forsyth's opposition relies on materially different or additional *facts* from those pleaded in the complaint or subject to judicial notice.

United States District Court
Northern District of California

enjoin an industry association from applying a certification mark it was in the process of registering to goods that met the organization's standards (also under development at the time) for what properly could be described as "organic."  The California Court of Appeal held that application of the industry association's "OASIS organic" seal—a certification trademark—to a particular product would only be a representation of the product's ingredients and quality, not an exercise of speech on a matter of public interest subject to protection under the anti-SLAPP statute.  *Id.* at 1203-04.  Forsyth contends the same result should apply here to CARA's certification trademarks.

The flaw in Forsyth's reasoning, however, is that while some certification trademarks undoubtedly are merely representations of the characteristics of products and therefore arguably only commercial speech outside the purview of anti-SLAPP and entitled to only limited First Amendment protections, CARA's marks serve a different purpose and arise in a different context. Indeed, the certification statements filed with the PTO when each of the marks was registered plainly explain that CARA is merely "certifying" that "*in its opinion*" the particular film warrants a particular level of parental caution.  Furthermore, the underlying "product"—films—are not mere commercial products, but are expressive works implicating anti-SLAPP concerns and plainly entitled to full First Amendment protection.[2]

Moreover, with respect to anti-SLAPP, the statute itself expressly recognizes the distinction.  While the legislature amended the law so that it generally would not apply to claims arising from commercial advertising (Cal. Code Civ. P § 425.17(c)), it provided a carve-out for "[a]ny action against any person or entity based upon the creation, dissemination, exhibition,

---

[2] *See also, In re Tam*, 808 F.3d 1321 (Fed. Cir. 2015).  In *Tam*, the Court held the Lanham Act's bar on the registration of "scandalous, immoral, or disparaging" trademarks, 15 U.S.C. § 1052(a), is an invalid regulation of speech, because trademarks "often have an expressive aspect over and above their commercial-speech aspect."  *Id.* at 1338. After briefing in this matter was complete, the Supreme Court granted a petition for a writ of *certiorari* in *Tam* on the question of whether that provision of the Lanham Act is invalid on its face.

1   advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic

2   work, including, but not limited to, a motion picture or television program." Cal. Code Civ. P §

3   425.17(d)(2). As to such actions, the statute continues to apply.

4         Finally, even assuming the ratings themselves could somehow be deemed not to constitute

5   speech protected under the anti-SLAPP statute, CARA's acts in applying the ratings to movies

6   would constitute "conduct *in furtherance of* the . . . . constitutional right of free

7   speech. Cal. Code Civ. P. § 425.16(e)(4). Thus, defendants have satisfied the first prong of the

8   anti-SLAPP inquiry.

9

10        **B.  The claims**

11        The parties are in agreement that because defendants' anti-SLAPP motion challenges the

12  complaint on its face, the second prong—that a plaintiff be able to demonstrate a probability of

13  prevailing on the merits—folds into the analysis under Rule 12(b)(6) as to whether a claim has

14  been stated. As reflected in the discussion above, CARA holds First Amendment rights to express

15  its opinions that are reflected in the ratings system. Even focusing on the certification marks

16  alone, that right precludes the basic relief Forsyth seeks in this action—forcing CARA to express

17  different or additional opinions. Accordingly, none of the claims are tenable under Rule 12(b)(6)

18  and the second prong of the anti-SLAPP inquiry. Each claim, as noted below, also fails

19  independently of the First Amendment issue.

20

21        *Misrepresentation*

22        Forsyth insists that a rating less stringent than R is a representation that "the film is

23  suitable for children under seventeen unaccompanied by a parent or guardian. The ratings plainly

24  make no such representations. Rather, the PG and PG-13 ratings caution parents that material in

25  such movies may be inappropriate for children. More fundamentally, the ratings reflect the

26

27

28        ORDER GRANTING DEFENDANTS' MOTIONS TO STRIKE AND DISMISS
          CASE NO.  16-cv-00935-RS

United States District Court
Northern District of California

1   consensus *opinion* of CARA board members.[3]  As such, neither intentional nor negligent

2   misrepresentation claims are tenable as pleaded.

3

4       *Negligence*

5       To the extent Forsyth's negligence claim relies on CARA's communication of the ratings

6   to the public, it is duplicative of negligent misrepresentation, and fails for the same reasons.  To

7   the extent Forsyth may contend some other conduct on defendants' part is negligent, he has failed

8   to allege facts giving rise to any legal duty.[4]

9

10      *Breach of Fiduciary Duty*

11      Forsyth has alleged no facts that would, if proven, establish defendants had a fiduciary

12  duty towards him or the putative class.

13

14      *Nuisance*

15      "[A] private nuisance is a civil wrong based on disturbance of rights in land while a public

16  nuisance is not dependent upon a disturbance of rights in land but upon an interference with the

17  rights of the community at large." *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal.App.3d 116,

18  124 (1971) (internal citation omitted).  Forsyth's allegation that defendants' conduct can be

19  characterized as a private nuisance fails because no infringement on real property rights is, or

20  could be, alleged.  The public nuisance label fails because Forsyth has not shown how the alleged

21  facts create a public nuisance, or even assuming there is a public nuisance, how it would be

22  _____

23  [3]  Additionally, the facts pleaded fall short of establishing justifiable reliance. Indeed, given
    Forsyth's allegations that he purchased tickets to ten movies over four years, he cannot plausibly

24  allege he understood a rating less than R meant a film would contain no tobacco imagery.

25  [4] Defendants also contend the negligence and other claims fail for lack of proximate cause.
    Forsyth openly acknowledges that the putative class—parents of children exposed to tobacco

26  imagery in movies—cannot recover for the alleged resulting increases in disease and death from
    tobacco use.  The complaint alleges, however, that the class suffered financial injury from

27  purchasing tickets for their children to watch movies that they would not have attended if rated R.

28

United States District Court
Northern District of California

"specially injurious" to him.  *See* Cal. Civil Code §3493 ("A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise."); *Venuto*, *supra*, 22 Cal.App.3d at 124 ("Where the nuisance alleged is not also a private nuisance as to a private individual he does not have a cause of action on account of a public nuisance unless he alleges facts showing special injury to himself in person or property of a character different in kind from that suffered by the general public." )(internal citations omitted).

### False advertising

Forsyth has alleged no facts sufficient to support a false advertising claim, for the same reasons that the more general misrepresentation claims fail.

### UCL

With the failure of all of the underlying alleged claims of wrongful conduct, the UCL claim necessarily falls as well.

## CONCLUSION

The motion to strike and the motion to dismiss are granted.  While the possibility of curing the defects identified in this order through amendment appears remote, Forsyth will be given the opportunity to do so, in the event he has a good faith basis to offer different facts or claims that would alter the analysis.[5]  Any amended complaint shall be filed within 20 days of the date of this order.

---

[5] Following the hearing, Forsyth sought leave to file a supplemental brief.  Although that brief may attempt to articulate some of his arguments in a slightly different fashion and with what he believes is greater clarity, he has not shown it to contain anything materially new or different. Nor, to the extent the proposed supplemental brief could be construed as presenting anything substantively distinct from what was presented in the prior briefing and at argument, has Forsyth shown a basis for presenting it at this late point in time.  Accordingly, the request for leave to file the supplemental brief is denied.

United States District Court
Northern District of California

**IT IS SO ORDERED**.

Dated:   November 10, 2016

_____
RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California